IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES MCNEAL,

               Plaintiff,

v.

SAFEWAY, INC.; UNITED FOOD AND
COMMERCIAL WORKERS LOCAL 555,

               Defendants.

Case No. 3:25-cv-00314-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

       Plaintiff James McNeal ("McNeal"), a self-represented litigant, originally filed this lawsuit against Defendants Safeway, Inc. ("Safeway") and United Food and Commercial Workers Local 555 ("UFCW") (together, "Defendants") in Multnomah County Circuit Court. After UFCW removed the lawsuit to federal court, McNeal moved to remand pursuant to 28 U.S.C. § 1447(c).[1] The parties have consented to the jurisdiction of a magistrate judge pursuant

---

       [1] Although his filing is titled "Response to Notice of Removal," McNeal "move[s]" to remand to state court under "28 U.S.C. § 1447." (*See* Pl.'s Mot. Remand ("Pl.'s Mot.") at 1-2, ECF No. 7.)

to 28 U.S.C. § 636(c). For the reasons explained below, the Court denies McNeal's motion to remand.

## BACKGROUND

### I.    ALLEGED FACTS

In November 2019, McNeal, an African American man, began working as a courtesy clerk, checker, and all-purpose clerk at Safeway's store in Troutdale, Oregon. (*See* Compl. at 1-2, ECF No. 10 at 4-5, attaching McNeal's complaint; Am. Compl. at 1-23, ECF No. 5 at 3-25, attaching McNeal's amended complaint, which includes an unnumbered cover page). At all relevant times, McNeal and other Safeway employees were members of UFCW, which maintained a collective bargaining agreement ("CBA") with Safeway. (Am. Compl. at 4-7, 12-13, 16, 19-20.)

In August 2023, McNeal was involved in an incident with several customers at his check stand. (*Id.* at 4-6.) The customers complained and demanded to speak to a manager because McNeal used Safeway's plastic bags instead of their "personal reusable bags." (*Id.* at 4.) After a manager yelled at McNeal to leave and that it was "all [McNeal's] fault," the customers became more hostile and yelled insults at and threatened to physically harm McNeal. (*Id.*) McNeal feared for his "safety and well-being" and "made several attempts to deescalate and redirect" two male teenagers who "appeared from inside the grocery store," but one of the "threatening customer[s] continued to be hostile and began using a racial slur saying the n[-]word." (*Id.* at 5.) At that point, a "fight broke out" between the two teenagers and customer who used the racial slur. (*Id.* at 5-6.)

Law enforcement responded to the scene and did not arrest or charge McNeal. (*Id.* at 6.) Approximately one month later, however, Safeway issued McNeal a disciplinary write-up based on the incident. (*Id.*) In its disciplinary write-up, Safeway stated that McNeal "refused" to use a

customer's "reusable shopping bags resulting in an altercation that led to a fight between [three] customers inside the store [and] placing customers, associates, and [McNeal] in harms' way." (*Id.*) Safeway's disciplinary write-up added that "[r]ather than excusing [himself] from the situation, [McNeal] escalated it and followed the customer toward the door where the fight broke out." (*Id.*)

McNeal emphasizes that this write-up is "false" and "misrepresent[s] . . . what occurred," and that despite these events, Safeway allowed the customer to "frequent[] the store after the incident, and . . . engage [McNeal] while [he] was on [his] shifts." (*Id.* at 5-7, 18.) McNeal also asserts the August 2023 incident and write-up marked the "start" of a series of events in which Safeway employees, several of whom also served as UFCW representatives, abused their positions, neglected their responsibilities, failed to act in good faith, address or investigate his reports, remedy the conduct of which he complained, or advocate on his behalf, and permitted "intolerable working conditions," including false, offensive, and defamatory reports, reduction in work hours, discriminatory targeting, retaliation, "racial abuse," harassment, and cover-ups. (*Id.* at 4-23.)

In November 2024, after consulting with medical professionals regarding his ongoing work-related issues, stress, "mental anguish," and depression and experiencing a "[s]ickle cell crisis," McNeal decided that he needed to "resign" from his position at Safeway.[2] (*See id.* at 15,

---

[2] "In a sickle cell crisis, the different organs throughout the body, including the brain and the heart and muscles, all start to be deprived of oxygen because the blood is clogged up by the sickle cells and not flowing freely." *Afolayan v. Dep't of Just.*, No. 2021-1452, 2022 WL 1124965, at *2 (Fed. Cir. Apr. 15, 2022) (simplified). "[C]rises may occur with the onset of dehydration, stress, illness, and change in temperature, among others." *Tillery v. Kalinski*, No. 5:17-cv-00194, 2020 WL 400647, at *2 (W.D.N.C. Jan. 23, 2020) (simplified); *see also Afolayan*, 2022 WL 1124965, at *2 ("In their extreme form and in rare cases, conditions that could be harmful for people with sickle cell trait include low oxygen levels in the air (e.g., when mountain climbing, exercising extremely hard in military boot camp, or training for an athletic

22-23, reflecting that McNeal alleges that his resignation effectively amounted to "constructive discharge").

## II.    PROCEDURAL HISTORY

McNeal originally filed this action in Multnomah County Circuit Court on August 19, 2024. (*See* Compl. at 1, including a time and date stamp and identifying the Oregon circuit court).

McNeal styled his complaint as asserting claims for breach of contract, harassment, discrimination, retaliation, and hostile work environment, and seeking $4 million in damages. (*Id.*) In the caption of his complaint, McNeal named the following eight defendants: (1) McNeal's then-employer, Safeway, (2) Safeway's labor relations manager, Jessica Yoder ("Yoder"), (3) Safeway's store director, Benny Quintanilla ("Quintanilla"), (4) Safeway's front-end manager and person-in-charge ("PIC"), Jnet Pfeiffer ("Pfeiffer"), (5) Safeway's manager, Carmen Pennie ("Pennie"), (6) Safeway's security and head of loss prevention, Doug Stewart ("Stewart"), (7) Safeway's union steward and representative, Kelly Pagliaro ("Pagliaro"), and (8) Safeway's manager and union steward, Jeremiah Renfrow ("Renfrow").[3] (*See id.*, listing only these defendants' names; Am. Compl. at 4, 6, 11, 18, 23, addressing the defendants' roles in an amended pleading; *see also* Pl.'s Mot. at 4, arguing that Pagliaro's employer is UFCW, not Safeway).

///

---

competition), dehydration, and high altitudes (e.g., flying, mountain climbing, or visiting a city at a high altitude).") (simplified).

[3] "Stewards are not simply employees—although they are that—they are also representatives of the union." *United Bhd. of Carpenters & Joiners of Am. v. Metal Trades Dep't, AFL-CIO*, 770 F.3d 846, 848 (9th Cir. 2014) (simplified). "As representatives of the union, stewards are bound by its duty to represent the rank-and-file members of the bargaining unit fairly." *Id.*

Despite naming eight defendants, McNeal failed specifically to allege the basis of any defendant's liability. (*See* Compl. at 1-2.) McNeal's allegations consisted of only these four sentences:

> [On] August 12[,] 2023[,] an [i]ncident occurred that caused racial discrimination, hostile work environment, retaliation, ongoing harassment, bullying and threatening of termination.

> After [the] [A]ugust 12th incident[,] I have become the target of continued racial slurs[,] ongoing harassment, retaliation, hostile work environment and belittling, causing mental stress and mental anguish[.]

> I have suffered a reduction/cut in hours for a long period of time[.]

> The facts and evidence will prove the legitimacy of my complaint[.]

(*Id.* at 1.)

On October 14, 2024, Pagliaro, acting through UFCW's current counsel, moved to dismiss McNeal's complaint for failure to state a claim or, alternatively, to make it more definite and certain. (Def. Pagliaro's Mot. Dismiss & Alt. Mot. Make More Definite & Certain at 1-5, ECF No. 10 at 6-10; *cf.* Defs.' Joint Mot. Extension Time at 1, 4-5, ECF No. 16, identifying Defendants' counsel and their firms). About three weeks later, on November 5, 2024, the other seven named defendants, acting through Safeway's current counsel, also moved to dismiss McNeal's complaint for failure to state a claim. (Safeway Defs.' Mot. Dismiss at 1-4, ECF No. 10 at 11-14.)

On November 19, 2024, McNeal resigned from his position at Safeway. (Am. Compl. at 22.)

On December 17, 2024, the state court judge held a hearing on the defendants' pending motions.[4] *See* Docket, *McNeal v. Safeway*, No. 24-cv-39780 (Multnomah Cnty. Cir. Ct. filed

---

[4] The Court may (and does) take judicial notice of McNeal's state court proceedings. *See* FED. R. EVID. 201(c)(1) ("The court . . . may take judicial notice on its own."); *United States v.*

Aug. 19, 2024) (providing the time and date of the motions hearing under the docket's "calendar information").

On January 8, 2025, the state court judge signed a proposed Order of Dismissal granting the defendants' motions and dismissing McNeal's complaint without prejudice for failing to state a claim for relief. (Order Dismissal at 1-2, ECF No. 10 at 16-17.) The state court judge also noted that McNeal filed two unspecified documents on November 22, 2024, neither of which "constitute[d] an amended complaint," and McNeal's amended complaint was due in thirty days. (*Id.* at 1.)

On February 5, 2025, McNeal timely filed an amended complaint in state court. (*See* Am. Compl. at 1, ECF No. 5 at 3, providing a time and date stamp; UFCW's Notice Removal ¶ 1, confirming the filing date). Like his original complaint, McNeal styled his amended complaint as asserting claims for breach of contract, harassment, discrimination, retaliation, and hostile work environment, and seeking $4 million in damages. (Am. Compl. at 1-2.) Unlike his original complaint, however, McNeal named only Safeway and UFCW as defendants and devoted over twenty single-spaced pages to factual allegations regarding the basis of each defendant's liability (i.e., the manner in which Quintanilla, Pfeiffer, Pennie, Stewart, Pagliaro, and Renfrow treated

---

*Aguilar*, 782 F.3d 1101, 1103 n.1 (9th Cir. 2015) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992))); *cf. Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1186 n.2 & n.3 (9th Cir. 2024) (granting requests to take judicial notice of state court dockets); *Abdulaziz v. Twitter, Inc.*, No. 21-16195, 2024 WL 4688893, at *1 n.1 (9th Cir. Nov. 6, 2024) (taking "judicial notice of court filings in other proceedings related to th[e] case" (citing *Aguilar*, 782 F.3d at 1103 n.1)); *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (noting that courts "may take judicial notice of undisputed matters of public record," such as "documents on file in . . . state court" (first citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); and then citing *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002))).

McNeal and handled the August 2023 incident, McNeal's reports, and subsequent events). (*Id.* at 3-23.)

Furthermore, and unlike his original complaint, McNeal asserted claims against Defendants under, among other statutes, Title VII of the Civil Rights Act of 1964 ("Title VII"). (*Id.* at 5, 9, 19.) McNeal also made clear that he based his breach of contract claim on provisions of the CBA between UFCW and Safeway. (*See id.* at 7, 12-13, 20-21, 23, quoting and alleging violations of specific CBA provisions). Additionally, McNeal clarified that he based his claims on his union representatives' alleged breach of their "duty of fair representation" and failure to act in "good faith," and that he filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") in May 2024.[5] (*Id.* at 7, 12-14, 19.)

---

[5] "There are effectively two limitations periods for Title VII claims." *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1106 (9th Cir. 2018); *see also Myers-Desco v. Lowe's HIW, Inc.*, 484 F. App'x 169, 171 (9th Cir. 2012) (noting that the plaintiff "satisfied the two established prerequisites for exhausting administrative remedies prior to initiating a lawsuit for Title VII claims") (citation omitted). "First, a claimant must exhaust administrative remedies by filing a charge with the EEOC or an equivalent state agency . . . and receiving a right-to-sue letter." *Scott*, 888 F.3d at 1106 (first citing 42 U.S.C. § 2000e-5(e)(1); and then citing *Jasch v. Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002)). "Second, after exhausting administrative remedies, a claimant has [ninety] days to file a civil action." *Id.* (citing 42 U.S.C. § 2000e-5(f)(1)). It is not clear from the record whether McNeal satisfied these prerequisites (or received a right-to-sue letter), but neither prerequisite is "jurisdictional, a term generally reserved to describe the classes of cases a court may entertain (subject-matter jurisdiction)[.]" *Fort Bend County v. Davis*, 587 U.S. 541, 543, 547 (2019) (addressing this term and whether Title VII's "charge-filing requirement" or "charge-filing precondition to suit" is a 'jurisdictional' requirement that can be raised at any stage of a proceeding . . . [or] a procedural prescription mandatory if timely raised, but subject to forfeiture if tardily asserted," and holding that "Title VII's charge-filing instruction is not jurisdictional"); *Carbajal v. Hayes Mgmt. Serv., Inc.*, No. 24-2870, 2025 WL 1098877, at *2 (9th Cir. Apr. 14, 2025) ("Title VII's [ninety]-day requirement for filing suit is not jurisdictional, but is 'a statute of limitations subject to equitable tolling in appropriate circumstances.'" (quoting *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172-74 (9th Cir. 1986), *opinion amended on denial of reh'g*, 815 F.2d 570 (9th Cir. 1987))); *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 417 & n.4 (2023) ("[The Supreme Court] routinely treat[s] as nonjurisdictional threshold requirements that claimants must complete, or exhaust, before filing a lawsuit. . . . There are many examples. To name [one, the Supreme Court] deemed exhaustion requirements nonjurisdictional in *Fort Bend County*[, 587 U.S. at 549-52] (Title VII, 42 U.S.C.

On February 25, 2025, less than thirty days after McNeal filed his amended complaint naming UFCW as a defendant and asserting claims under Title VII, UFCW timely removed McNeal's lawsuit to this district based on federal question jurisdiction.[6] *See* 28 U.S.C. § 1331 (federal question jurisdiction); *id.* § 1367(a) (supplemental jurisdiction), *id.* § 1441(a) (general removal statute), *id.* § 1446 (removal procedures); (UFCW's Notice Removal ¶¶ 2, 5, 13-14 & Def. Safeway's Opp'n Pl.'s Mot. Remand ("Safeway's Opp'n") at 2-4, ECF No. 11, invoking these statutes).

UFCW also removed McNeal's lawsuit to federal court on the ground that the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, completely preempts at least one of McNeal's state law claims and thus presents a federal question under 28 U.S.C. § 1331. (UFCW's Notice Removal ¶¶ 5-14.) UFCW added that (1) Safeway and UFCW each received a copy of McNeal's amended complaint "but neither ha[d] been served," (2) Safeway "join[ed]" in UFCW's notice of removal, (3) UFCW attached McNeal's amended complaint and Safeway's

§§ 2000e-5(e)(1), (f)(1))[.]") (simplified); *Shoaga v. Nelson*, No. 23-16002, 2024 WL 5205748, at *1 (9th Cir. Dec. 24, 2024) ("The district court properly dismissed [the self-represented plaintiff's Title VII] action [under Rule 12(b)(6)] because [he] failed to allege facts sufficient to show that he exhausted administrative remedies." (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099-1100 (9th Cir. 2002), *abrogated on other grounds by Fort Bend County*, 587 U.S. at 543-53)).

[6] Although "Title VII protection requires an employment relationship," *Bounchanh v. Wash. State Health Care Auth.*, No. 19-36059, 2020 WL 8922184, at *1 (9th Cir. Aug. 7, 2020) (citing *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999)), the absence of such a relationship does not alone preclude a defendant's removal of a Title VII action to federal district court. *See Shah Aerotek, Inc.*, No. 3:21-cv-00422-SI, 2021 WL 3373789, at *4-5 & n.2 (D. Or. Aug. 3, 2021) ("Although '[o]nly defendants against whom [the federal law claim] has been asserted are required to *join in or consent* to the removal,' there is no requirement that the specific defendant against whom the federal law claim is alleged be the defendant who *files* the notice of removal. Indeed, if Congress intended to require that only the specific defendant against whom a federal law claim was asserted could file a notice of removal, Congress could have specified that, rather than require the defendant against whom the federal law claim is asserted merely to *consent* to removal, presumably by another party." (quoting 28 U.S.C. § 1441(c)(2))).

"Notice of Joinder" as "Exhibit 1" and "Exhibit 2" to its notice of removal, and (4) UFCW would provide McNeal with "written notice" of its filing of the notice of removal. (*Id.* ¶¶ 1-3, 15.)

Immediately after filing its notice of removal on February 25, 2025, UFCW docketed its "written notice" to McNeal. (*See* Notice Pl. Removal Fed. Ct. ("Pl.'s Notice") at 1-2, ECF No. 2.) Later that day, UFCW docketed "Exhibit 1" to its notice of removal (i.e., McNeal's amended complaint), presumably because UFCW realized that it had failed to attach the exhibit to its initial filing. (*See* UFCW's Notice Removal Ex. 1 at 1-25, ECF No. 5; Notice Correction, ECF No. 6, correcting and replacing ECF No. 5 on March 5, 2025, because it was "missing a case caption cover page").

Although UFCW filed Exhibit 1 to its notice of removal, UFCW never docketed "Exhibit 2" (i.e., Safeway's "Notice of Joinder"). (*Cf.* UFCW's Notice Removal ¶ 3, stating that UFCW "attached" this exhibit). Relatedly, in its notice to McNeal, UFCW represented that "Safeway [was] expected to join in [UFCW's] removal" of this action to federal court. (Pl.'s Notice at 1; *see also* UFCW's Notice Removal at 1-2, 4, demonstrating that UFCW's counsel signed the notice of removal and declared three times that "[a]ll Defendants join in [UFCW's] removal" to federal court).

In early March 2025, the parties began discussing their availability to meet and confer regarding McNeal's proposed settlement and "procedural issues" that Defendants believed the parties needed to resolve.[7] (UFCW's Exs. 3 & 5, attaching emails from March 3 through March

---

[7] In his March 2025 emails, McNeal asked to "meet and confer" as "outlined in" Local Rule ("LR") 7-1 but appeared only to propose settlement terms. (*See* Def. UFCW's Exs. Supp. Opp'n Pl.'s Mot. Remand ("UFCW's Ex.") Ex. 3 at 2-4, ECF No. 10 at 20-22; *id.* Ex. 5 at 1; Pl.'s Mot. at 7; *see also* Pl.'s First Reply Supp. Mot. Remand ("Pl.'s First Reply") Exs. 1-2, ECF No. 12 at 13-26, attaching an exhibit list and emails from March 3 through March 21, 2025; Pl.'s

12, 2025; *see also id.* Ex 1, attaching McNeal's complaint and the defendants' state court motions; *id.* Ex. 2, attaching the state court's Order of Dismissal; *id.* Ex. 4, attaching subsequent emails).

On or about March 11, 2025, the parties agreed to meet via Zoom on March 17, 2025.[8] (*See* UFCW's Ex. 3 at 1, noting that on March 11, 2025, McNeal told Defendants' counsel that he was "available anytime next week . . . between noon and 5 p.m.," and UFCW's counsel responded, "Let's plan on 2:00 p.m. on Monday, March 17th. I will send a Zoom invite for the call."; *see id.*, showing that the next day, McNeal stated that the plan "work[ed] well" with his availability).

Also on March 11, 2025, McNeal filed his motion to remand under 28 U.S.C. § 1447(a). (Pl.'s Mot. at 1.)

On March 19, 2025, after the parties held their meeting on the Zoom platform, Defendants' counsel sent McNeal emails conveying their clients' acceptance of service process.[9]

---

Second Reply Supp. Mot. Remand ("Pl.'s Second Reply") Exs. 1-2, ECF No. 13 at 15-28, attaching the same but adding a March 6 email and omitting a March 11 email). Defendants do not argue that McNeal failed to satisfy LR 7-1(a)'s conferral requirement with respect to his remand motion but the Court reminds McNeal (for future purposes) that LR 7-1 requires that parties attempt to confer in good faith before filing *motions* in federal court, not generally about settling an entire case. *See* LR 7-1(a)(1)-(3) ("Except for motions for temporary restraining orders, the first paragraph of every motion must certify that . . . the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so[.] . . . The Court may deny any motion that fails to meet this certification requirement.").

[8] Zoom is "a remote video conference platform[.]" *Unger v. Majorca At Via Verde Homeowners Ass'n Inc.*, No. 21-13134, 2022 WL 4542348, at *1 (11th Cir. Sept. 29, 2022) (per curiam).

[9] About one month earlier, McNeal attempted to effect service by mail (return receipt requested) at counsel's law firms and UFCW's office. (*See* Pl.'s First Reply Ex. 3, ECF No. 12 at 27-39; Pl.'s Second Reply Ex. 3, ECF No. 13 at 29-41, attaching receipts dated February 10 and February 11, 2025). Courts have previously addressed similar service issues. *See Rosado v. Roman*, No. 16-cv-00784-SI, 2017 WL 3473177, at *4 (D. Or. Aug. 11, 2017) ("As applied to district courts in Oregon, to invoke any of the alternative methods, a plaintiff must first show that

(Pl.'s First Reply Ex. 2 at 2-4, ECF No. 12 at 22-24; Pl.'s Second Reply Ex. 2 at 3-4, ECF No. 13 at 25-27.)

On March 25, 2025, Defendants timely filed oppositions to McNeal's motion to remand. (Safeway's Opp'n at 1-4; Def. UFCW's Opp'n Pl.'s Mot. Remand ("UFCW's Opp'n") at 1-6, ECF No. 9.) After the parties completed their briefing on April 8, 2025, the Court issued an Order taking McNeal's motion to remand under advisement as of April 9, 2025. (ECF Nos. 12-14.)

## LEGAL STANDARDS

"A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, [pursuant to] 28 U.S.C. § 1447(c)[.]"[10] *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). A motion to remand under Section 1447(c) is the "functional equivalent" of a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1). *Id.* Given the "parallel nature of the inquiry," a plaintiff's motion to remand "challenging removal jurisdiction is evaluated the same as a [Rule] 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction." *DeFiore v. SOC LLC*, 85 F.4th 546, 552 (9th Cir. 2023) (citing *Leite*, 749 F.3d at 1121-22); *see also Leite*, 749 F.3d at 1122 ("Challenges to the existence

---

a registered agent, officer, or director could not be found within the county the court is located in. [The self-represented plaintiff] has not asserted that a registered agent, officer, or director was not in the district or county in which this [c]ourt is located, nor that he . . . had to rely on these alternative methods. Accordingly, the [defendant] . . . has not properly been named or served in this lawsuit.").

[10] "Section 1447(c) reads, in relevant part: 'A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.'" *Casola v. Dexcom, Inc.*, 98 F.4th 947, 953 (9th Cir. 2024) (quoting 28 U.S.C. § 1447(c)).

of removal jurisdiction should be resolved within this same framework, given the parallel nature of the inquiry.").

"Under that framework, where the moving party does not contest the removal notice's factual allegations but instead asserts that those allegations are facially insufficient to invoke federal jurisdiction, [courts] accept the notice's factual allegations as true and draw all reasonable inferences in favor of the remover." *DeFiore*, 85 F.4th at 552 (citing *Leite*, 749 F.3d at 1121-22). By contrast, "[w]hen the plaintiffs' motion to remand raises a factual challenge by 'contesting the truth of the remover's factual allegations, usually by introducing evidence outside the pleadings,' . . . the remover 'must support her jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context.'" *Id.* at 552-53 (simplified) (quoting *Leite*, 749 F.3d at 1121). "Except when the factual dispute material to subject-matter jurisdiction is intertwined with an element of the plaintiff's claim, the district court may resolve the factual dispute itself." *Id.* (citing *Leite*, 749 F.3d at 1121-22 & n.3).

## DISCUSSSION

McNeal moves to remand to state court under Section 1447(c), arguing that this Court "lacks jurisdiction" because his "primary claims" are based on state, not federal, law.[11] (Pl.'s

---

[11] McNeal expressed concerns about his lack of "knowledge and . . . experience [with] court proceedings," and stated that he tried "ten different law firms to find an attorney" but was unsuccessful. (Pl.'s Mot. at 6.) The Court notes that McNeal may consult this district's 2025 Handbook for Self-Represented Parties, which includes useful guidance and references to applicable procedural and local rules. *See OUMA v. Portland State Univ.*, No. 3:24-cv-00991-IM, 2025 WL 746059, at *1 n.2 (D. Or. Mar. 7, 2025) (noting the 2025 handbook is "available at https://www.ord.uscourts.gov/phocadownload/userupload/prose/Handbook%20for%20Self-Represented%20Parties.pdf"). In addition, McNeal may seek free legal assistance from the Federal Bar Association's free legal clinic, and apply for a free, thirty-minute telephone session with a volunteer attorney at this website: https://oregonfederalbarassociation.org/federal-law-clinic/.

Mot. at 2, 4-5, 9.) The Court concludes that it has subject matter jurisdiction and denies McNeal's motion to remand.

## I.    APPLICABLE LAW

The general removal statute is codified at 28 U.S.C. § 1441(a). *See Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (noting as much); *see also Sharma v. HSI Asset Loan Obligation Tr. 2007-1 by Deutsche Bank Nat'l Tr. Co.*, 23 F.4th 1167, 1170 (9th Cir. 2022) (referring in the alternative to the "federal removal statute"). The general "removal statute provides that 'any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants' to the appropriate federal district court." *Sharma*, 23 F.4th at 1170 (emphasis omitted) (quoting 28 U.S.C. § 1441(a)).

"The great majority of federal cases involve just two bases for jurisdiction." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2018); *see also Home Depot*, 587 U.S. at 437 (observing that "Congress granted federal courts jurisdiction over two general types of cases"). Specifically, "Congress granted federal courts jurisdiction over . . . cases that 'aris[e] under' federal law, . . . and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties[.]" *Home Depot*, 587 U.S. at 437 (first quoting 28 U.S.C. § 1331; and then citing 28 U.S.C. § 1332(a)); *see also Hansen*, 902 F.3d at 1056 (making a comparable observation). Each of "[t]hese jurisdictional grants[, which] are known as 'federal-question jurisdiction' and 'diversity jurisdiction,' respectively[,] . . . serves a distinct purpose: Federal-question jurisdiction affords parties a federal forum in which 'to vindicate federal rights,' whereas diversity jurisdiction provides 'a neutral forum' for parties from different States." *Id.* at 437-38 (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)).

"In our federal system, the States possess sovereignty concurrent with that of the Federal Government, limited only by the [U.S. Constitution's] Supremacy Clause." *Hansen*, 902 F.3d at 1056 (citing *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)). Whereas "[s]tate courts enjoy a 'deeply rooted presumption' that they have jurisdiction to adjudicate all claims arising under state or federal law[,] . . . [it is] 'presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record.'" *Id.* (first quoting *Tafflin*, 493 U.S. at 458; and then quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). Given the presumption that "a cause lies outside [a federal court's] limited jurisdiction, . . . the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Upon removal, th[at] burden . . . shifts to the [d]efendant as '[t]he party invoking federal jurisdiction.'" *Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023) (per curiam) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

The "burden of establishing subject matter jurisdiction" is "particularly stringent for removing defendants because '[t]he [general] removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand.'" *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773-74, 776 (9th Cir. 2017) (first quoting *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); and then citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)); *see also Hansen*, 902 F.3d at 1057 (stating that the "removing defendant bears the burden of overcoming the 'strong presumption against removal jurisdiction'"

(quoting *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010))).[12]

## II.    ANALYSIS

The Court finds that it has federal question jurisdiction over this matter under 28 U.S.C. § 1331. For this reason and others explained below, the Court denies McNeal's motion to remand.

McNeal argues that the Court lacks subject matter jurisdiction over this action because his claims are based "primar[ily]" on state, not federal, law. (Pl.'s Mot. at 2, 4-5, 9.) The Court disagrees.

"Removal based on federal-question jurisdiction [under 28 U.S.C. § 1331] is reviewed under the longstanding well-pleaded complaint rule." *Hansen*, 902 F.3d at 1057 (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)). The well-pleaded complaint "rule provides that an action 'aris[es] under' federal law 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 392); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (explaining that "the determination of [federal question] jurisdiction is based only on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise" (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-10 (1983))).

///

---

[12] "Although it is not clear that proper removal is actually 'jurisdictional' in the more traditional sense, . . . the term 'removal jurisdiction' is often used." *Cerner Middle E. Ltd. v. Belbadi Enters. LLC*, 939 F.3d 1009, 1013 n.3 (9th Cir. 2019) (first quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64 (1996); and then quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 642-44 (2006)).

Consequently, this "longstanding rule makes the complaint—the plaintiff's own claims and allegations—the key to 'arising under' jurisdiction." *Royal Canin*, 604 U.S. at 26. If a plaintiff's "complaint presents no federal question, a federal court may not hear the [plaintiff's] suit." *Id.*; *see also Hansen*, 902 F.3d at 1056 ("A plaintiff is the master of the plaintiff's complaint, and has the choice of pleading claims for relief under state or federal law (or both). . . . [Thus], in the absence of diversity jurisdiction, 'the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court,' . . . under most circumstances." (first citing *Caterpillar*, 482 U.S. at 398-99; and then quoting *Caterpillar*, 482 U.S. at 399)).

In this case, McNeal was the master of his complaint and could have avoided a federal forum by eschewing claims based on federal law. McNeal, however, acknowledges that he did not do so: "This action . . . alleges claims arising under federal jurisdiction." (Pl.'s Mot. at 2.) Further, and most significantly, it is clear from the face of McNeal's complaint—"the key to 'arising under' jurisdiction," *Royal Canin*, 604 U.S. at 26—that McNeal is asserting claims under federal law. (*See* Am. Compl. at 5, 9, 19, alleging that McNeal's "action [was] brought against" Safeway based on its "violation of Title VII of the Civil Rights Act of 1964," Safeway's decision to reduce McNeal's work hours amounted to a "violation of Title VII of the United States Civil Rights Act of 1964," and McNeal filed a charge against Safeway with the EEOC in May 2024, claiming race discrimination and retaliation in "violation of Title VII of the Civil Rights Act of 1964").

McNeal now attempts to disavow his reliance on and assertion of claims under Title VII (and efforts to exhaust such claims by filing a charge with the EEOC, a federal agency), arguing that his state law claims are the "primary focus" or "[e]ssentially the primary focus" of his

amended complaint, and he does "not rel[y]" on the "federal question[s]" that he "mention[s]" in the amended complaint, "which makes the[m] . . . incidental or frivolous."[13] (Pl.'s Mot. at 4-5; *see also* Pl.'s Second Reply at 7-8, arguing that McNeal did not "bring any allegations or explicitly plead Title VII" and McNeal's "citing of Title VII of 1964 is . . . very limited"). McNeal also argues that the Court lacks supplemental jurisdiction over his state law claims because he "mention[ed] Title VII . . . without relying on it as . . . central to [his] case." (Pl.'s First Reply at 10.)

The Court concludes that McNeal's arguments lack merit. It is true that "[a] claim invoking federal-question jurisdiction . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503, 513 n.10 (2006) (first quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946); and then citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)). Contrary to McNeal's argument, however, McNeal's "own allegations and claims" control, *see Royal Canin*, 604 U.S. at 26, and clearly present a "colorable" or "arguable" Title VII claim. *See Fulfillment*

---

[13] McNeal was not entitled to file a second reply under LR 7-1(e)(1)-(3). Going forward, the Court will expect McNeal to comply with its local rules and will strike non-compliant filings. *See Ovitsky v. Oregon*, 594 F. App'x 431, 431-32 (9th Cir. 2015) (holding that "[t]he district court did not abuse its discretion by denying [the self-represented litigant's] motion for leave to file a third amended complaint because [her] motion failed to comply with local rules," and noting that "[LR] 7-1(a) [provides that] the first paragraph of every motion must contain a certification regarding attempts to meet and confer; otherwise, the court may deny the motion"); *McGee v. California*, No. 2:16-cv-01796, 2017 WL 902944, at *1 (E.D. Cal. Mar. 3, 2017) (noting that the plaintiff's "pro se status [did] not excuse compliance with the Federal Rules of Civil Procedures, Local Rules, and court orders"); *see also Scott v. Diaz*, 286 F. App'x 508, 509 (9th Cir. 2008) ("The district court did not abuse its discretion by dismissing [the self-represented plaintiff's] actions for failure to comply with court orders and local rules after warning [him] that non-compliance could result in the dismissal of his action."); *Hadsell v. Sickon*, No. 08-cv-01101-MO, 2009 WL 1290851, at *3 (D. Or. May 5, 2009) (explaining that "a district court may dismiss an action when a pro se plaintiff has . . . failed to comply with the Local Rules, the Federal Rules of Civil Procedure, and the court's orders") (simplified).

*Servs., Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case.'" (quoting *Steel Co.*, 523 U.S. at 89, 92)).

Where, as here, a plaintiff's complaint asserts claims under both state and federal law and thus give rise to "concurrent jurisdiction, the plaintiff may choose to file in either state or federal court." *Hansen*, 902 F.3d at 1056. "But if the plaintiff elects state court, the defendant then has the option of removing the case from state court to federal court under the general removal statute[.]" *Id.* (simplified); *see also Royal Canin*, 604 U.S. at 25 ("If a complaint filed in state court asserts federal-law claims, the defendant may remove the case to federal court." (citing 28 U.S.C. § 1441(a)). "And if the complaint also asserts state-law claims arising out of the same facts, [which is the case here,] the federal court may adjudicate those claims too, in the exercise of what is called supplemental jurisdiction." *Royal Canin*, 604 U.S. at 25 (citing 28 U.S.C. § 1367).

For these reasons, the Court rejects McNeal's argument that it lacks subject matter jurisdiction.[14]

McNeal also suggests that Defendants "cause[d] an unfair delay," argues that Defendants waived their "right to removal," and appears to question the sufficiency of Safeway's joinder in UFCW's notice of removal. (*See* Pl.'s Mot. at 5, 7-8.)

There is a "thirty-day deadline to remove a case to federal court." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1090 (9th Cir. 2021) (citing 28 U.S.C. § 1446(b)). In many cases, "the basis for

---

[14] The Court summarily rejects McNeal's request to impose "sanctions" on UFCW and/or Safeway. (Pl.'s Mot. at 6.) McNeal argues that UFCW engaged in "forum shopping" and "abuse of process" (*id.*), but the record before the Court does not support McNeal's allegations.

removal is clear from the complaint (or other initial pleading), and so the thirty days begin to run

from the date a defendant receives the initial pleading." *Id.* (citing 28 U.S.C. § 1446(b)(1)). "This

is the first pathway to removal." *Id.* The "second pathway to removal" occurs when a "case

stated by the initial pleading is not removable[.]" *Id.* (quoting 28 U.S.C. § 1446(b)(3)). In these

cases, "a notice of removal may be filed within [thirty] days after receipt by the defendant . . . of

a copy of an amended pleading, motion, order or other paper from which it may first be

ascertained that the case is one which is or has become removable." *Id.* (quoting 28 U.S.C.

§ 1446(b)(3)).

The first pathway to removal does not apply here because McNeal's complaint did not set

forth any ground for removal. *See id.* at 1093 (finding that the "first pathway [did] not apply"

because the "initial complaint [did] not set forth a ground for removal"). McNeal's complaint

named Safeway and seven individuals as defendants (and not UFCW) and sought $4 million in

damages and referred generally in the caption to claims for breach of contract, harassment,

discrimination, retaliation, and hostile work environment. (Compl. at 1-2.) At the same time,

however, McNeal did not invoke any specific state or federal law, and McNeal's factual

allegations consisted only of four sentences, none of which explain the basis of any defendant's

liability. (*See id.*) Thus, the first pathway to removal does not apply. *See Morgan v. Twitter, Inc.*,

No. 23-3764, 2025 WL 1248821, at *1 (9th Cir. Apr. 30, 2025) (holding that the "thirty-day time

limit did not begin even though [the defendant] could have estimated the class size using its own

customer data or information from an identical lawsuit" and in turn determined that the relevant

"amount-in-controversy requirement would have been met," and noting that the Ninth Circuit

has "declined to hold that materials outside the complaint start the thirty-day clock" (quoting

*Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013))); *Kuxhausen*, 707

F.3d at 1141 ("[The defendant] was not obligated to supply information which [the plaintiff] had omitted.").

The pertinent question, then, is "at what point could the federal [question] ground for removal *first be ascertained* from an amended pleading, motion, order, or other paper?" *Dietrich*, 14 F.4th at 1093 (addressing a similar situation under the federal officer removal statute, not general removal statute). The Ninth Circuit has "adopt[ed] a more explicit standard for the second pathway," namely, this "pathway's removal clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.'" *Id.* at 1091; *see also id.* at 1095 (holding that "an amended pleading, motion, order, or other paper must make a ground for removal unequivocally clear and certain before the removal clock begins under the second pathway of § 1446(b)(3)").

McNeal references the parties' motion practice and hearing in state court and that UFCW's counsel proposed substituting UFCW as a defendant in place of its employee, Pagliaro. (*See, e.g.*, Pl.'s Mot. at 3.) But McNeal's amended complaint is the only "amended pleading, motion, order, or other paper" that made any ground for removal "unequivocally clear and certain," thus triggering the thirty-day removal clock under the second pathway of § 1446(b)(3). (*See* Am. Compl. at 5, 9, 19, alleging violations of Title VII and that McNeal filed a charge with the EEOC).

McNeal filed his amended complaint on February 5, 2025. (*See id.* at 1, providing a time and date stamp; *see also* Pl.'s Mot. at 3, confirming the same filing date of "February 5th, 2025"). UFCW then filed its notice of removal on February 25, 2025. (Notice Removal at 4, 6.) Accordingly, UFCW timely removed this lawsuit to federal court. *See Dietrich*, 14 F.4th at 1095 & n.2 ("[The defendant's] removal was timely, as no ground for removal was unequivocally

clear and certain until after April 16, 2019. . . . [This] is the relevant date because [the defendant] removed thirty days later, on May 16, 2019. Thus, unless a pleading, motion, order, or 'other paper' started the removal clock before April 16, 2019, [the defendant's] removal was timely under § 1446(b).").

Given the actions that Defendants took in state court, McNeal also argues that Defendants waived their right to remove to federal court. (Pl.'s Mot. at 5.) The Ninth Circuit has "observed that a defendant 'may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum.'" *Kenny*, 881 F.3d at 790 (quoting *Resol. Tr. Corp. v. Bayside Devs.*, 43 F.3d 1230, 1240 (9th Cir. 1994)). "Such a waiver 'must be clear and unequivocal,' however." *Id.* (quoting *Resol. Tr.*, 43 F.3d at 1240).

Other "general removal principles" also warrant consideration. First, the Ninth Circuit has "made clear that [it] will not 'charge defendants with notice of removability until they have received a paper that gives them enough information to remove.'" *Id.* at 790 (brackets omitted) (quoting *Kuxhausen*, 707 F.3d at 1141). That means that "'[a]s long as the complaint or an amended pleading, motion, order or other paper does not reveal that the case is removable,' a defendant, in effect, 'may remove at any time.'" *Id.* at 791 (quoting *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (per curiam)). Second, "a defendant does not have a duty of inquiry if the initial pleading or other document is indeterminate with respect to removability." *Id.* (quoting *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013)). As a result, "even if a defendant could have discovered grounds for removability through [its own] investigation, it does not lose the right to remove because it did not conduct such an investigation

and then file a notice of removal within thirty days of receiving the indeterminate document." *Id.*

(quoting *Roth*, 720 F.3d at 1125). Third, a party "does not manifest an intent to litigate in state

court" by "tak[ing] necessary defensive action to avoid a judgment being entered automatically

against him[.]" *Id.* at 790 (quoting *Resol. Tr.*, 43 F.3d at 1240).

    Under the circumstances presented here, the Court concludes that Defendants did not

"clear[ly] and unequivocal[ly]" waive their right to remove McNeal's lawsuit to federal court.

The Ninth Circuit addressed a sufficiently similar (albeit distinguishable) procedural situation in

*Kenny*:

> The district court erred in concluding that [the defendant] waived its right
> to remove this case when the [the amended complaint] did not reveal a basis for
> removal . . . . It is undisputed that the [the amended complaint] is indeterminate as
> to the amount in controversy. Thus, [the defendant] could not have waived its
> right to remove by taking actions in state court "*after* it [was] apparent that the
> case [was] removable," [*Resol. Tr.*, 43 F.3d at 1240] (emphasis added), when its
> right to remove was not apparent from the [amended complaint].
>
>    . . . .
>
> [Consistent with these 'equally' applicable 'general removal principles'],
> nothing on the face of the [amended pleading] put [the defendant] on notice of the
> case's removability, and [the plaintiff] has not pointed to any other paper that
> would have done so. Under these circumstances, [the defendant] could not have
> "clear[ly] and unequivocal[ly]" waived its right to remove by responding to the
> [amended complaint]. *Resol. Tr.*, 43 F.3d at 1240[.] . . .
>
> Two additional points lend further support for our conclusion. First, [the
> defendant] filed a demurrer on the last day to respond to [the plaintiff's amended
> complaint]. While [the plaintiff] faults [the defendant] for filing a response
> addressing the merits of the [amended complaint], [the plaintiff] cannot dispute
> the fact that [the defendant] had to respond in some manner to the [amended
> complaint], or risk entry of a default judgment. [The defendant's] choice to file a
> demurrer, rather than another form of responsive pleading, to [the plaintiff's]
> indeterminate [amended complaint] did not amount to a waiver of its right to
> remove.
>
> Second, [the defendant] removed the case before [the plaintiff] opposed
> [the defendant's] demurrer, and before any hearing was held, let alone any ruling
> issued. Clearly, [the defendant] did not "manifest an intent to litigate in state

court," much less an intent to affirmatively "abandon [its] right to a federal forum." *Resol. Tr.*, 43 F.3d at 1240.

   For the foregoing reasons, we hold that the district court erred in concluding that [the defendant] waived its right to remove.

*Id.* at 791-92 (citations omitted).

  *Kenny* is distinguishable to the extent the defendant in that case removed to federal court before it participated in any hearing or received any ruling, which are facts that McNeal appropriately raises in his papers. (*See, e.g.*, Pl.'s Mot. at 5.) However, it is significant that these "additional points" only provided "further support" for the Ninth Circuit's conclusion, which, like this Court's conclusion, centered on the plaintiff's "indeterminate" pleading and absence of anything on the face of the plaintiff's pleading putting the defendant on "notice of the case's removability." *See id.* at 791-92. The Ninth Circuit explained that "[u]nder these circumstances, [the defendant] could not have 'clear[ly] and unequivocal[ly]' waived its right to remove by responding to the [plaintiff's then-operative complaint]." *Id.* at 790 (quoting *Resol. Tr.*, 43 F.3d at 1240).

  Here, Defendants remained entitled to remove up to thirty days after they received Plaintiff's amended complaint, which put them on notice of the case's removability. *See id.* ("'As long as the complaint or an amended pleading, motion, order or other paper does not reveal that the case is removable,' a defendant, in effect, 'may remove at any time.'" (quoting *Rea*, 742 F.3d at 1238)). Further, Defendants "could not have waived [their] right to remove by taking actions in state court '*after* it was apparent that [McNeal's] case was removable,' . . . when [Defendants'] right to remove was not apparent from [McNeal's initial complaint or any other motion, order, or paper]." *Id.* (brackets omitted) (quoting *Resol. Tr.*, 43 F.3d at 1240). Also supporting the Court's conclusion is that (1) Defendants' motions and defensive actions sought the information that McNeal failed to make apparent on the face of his complaint, and (2) the

state court's "rulings" were limited to a one-page proposed form order dismissing McNeal's

complaint without prejudice because he did not present "facts sufficient to constitute a claim."

(*See* Order Dismissal at 1; Def. Pagliaro's Mot. Dismiss & Alt. Mot. Make More Definite &

Certain at 3-4, arguing that McNeal's complaint's allegations were "open ended and vague" and

"so indefinite and uncertain that the precise nature of [any] claim [was] not apparent," and that

McNeal "should identify with sufficient specificity the basis for his claims as well as their

factual predicate—*i.e.*, just what did . . . Pagliaro do and what law(s) did she allegedly violate?";

Safeway Defs.' Mot. Dismiss at 2, 4, arguing that the defendants could not "adequately

investigate and respond to [McNeal's] complaint," because it consisted of "four" sentences in the

body of the complaint and "nothing more than legal conclusions without any supporting factual

assertions," lacked any detail about "the individual defendants and their alleged connections to

[McNeal's] various claims," and there was "no way to tell whether [McNeal was] asserting all

claims against all defendants, or only one claim against the moving [d]efendants"). Given these

facts, Defendants did not "clear[ly] and unequivocal[ly]" waive their right of removal.

Finally, McNeal also appears to challenge or question whether UFCW's notice of

removal satisfied the defendant unanimity rule. (*See* Pl.'s Mot. at 8, "If [it was] improper for the

opposing counsel to join together, . . . [McNeal] intend[s] to seek default judgment. [McNeal is]

not sure what the joinder means [in this context without] having any clarity [on such legal

matters.]").

"The defendant unanimity rule[, codified] in 28 U.S.C. § 1446(b)(2)(A)[,] requires that

'all defendants who have been properly joined and served must join in or consent to the removal

of the action.'" *Baiul v. NBC Sports, a division of NBCUniversal Media, LLC*, 732 F. App'x 529,

531 (9th Cir. 2018); *see also* 28 U.S.C. § 1446(b)(2)(A) (providing that "[w]hen a civil action is

removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action"). "The Ninth Circuit has 'conclude[d] that the filing of a notice of removal can be effective without individual consent documents on behalf of each defendant[,]' [and that] '[o]ne defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient.'" *Ray v. Dzogchen Shri Singha Found. USA Inc.*, No. 3:23-cv-00233-SI, 2023 WL 3451987, at *2 (D. Or. May 15, 2023) (quoting *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009)).

UFCW's counsel signed UFCW's notice of removal and, in three different locations, represented that "[a]ll Defendants join in [UFCW's] removal." (Notice Removal at 1-2, 4.) Thus, *Proctor* applies here and UFCW's notice of removal and Safeway's joinder was sufficient. *Cf. Ray*, 2023 WL 3451987, at *2 ("Because the [relevant] [d]efendants did not include [the necessary] statement in their Notice of Removal, . . . this holding [in *Proctor*] does not apply, and the[y] . . . did not satisfy the rule of unanimity in their Notice of Removal. Thus, the non-removing, or consenting, defendants had to file separate statements of consent or joinder in the removal."); *see also Song v. MTC Fin., Inc.*, 812 F. App'x 609, 609-10 (9th Cir. 2020) ("The district court properly rejected [the plaintiffs'] arguments that [the] [d]efendants' removal notice was deficient and that [the] [d]efendants waived their ability to remove. Counsel for one of the [d]efendants . . . 'asserted' in the notice that the other [d]efendants 'consent[] to the removal.' That is 'fully sufficient' under controlling precedent." (quoting *Proctor*, 584 F.3d at 1225)).

///

///

///

PAGE 25 – OPINION AND ORDER

In sum, Defendants satisfied the rule of unanimity, and McNeal has not presented any grounds to remand this case to state court.[15]

## CONCLUSION

For the reasons stated, the Court DENIES McNeal's motion to remand to state court (ECF No. 7).

**IT IS SO ORDERED.**

DATED this 2nd day of June, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[15] As discussed, the Court has federal question jurisdiction over McNeal's Title VII claims and supplemental jurisdiction over McNeal's related claims under state law. Accordingly, the Court denies McNeal's motion to remand and declines to address whether the LMRA completely preempts at least one of McNeal's claims and thus presents a federal question under 28 U.S.C. § 1331.