IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES MCNEAL,

                    Plaintiff,

        v.

UNITED FOOD AND COMMERCIAL
WORKERS LOCAL 555; SAFEWAY, INC.,

                 Defendants.

Case No. 3:25-cv-00314-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

       Plaintiff James McNeal ("McNeal"), a self-represented litigant, originally filed this employment action against Defendants Safeway, Inc. ("Safeway") and United Food and Commercial Workers Local 555 ("UFCW") (together, "Defendants") in Multnomah County Circuit Court. Following removal, Defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss McNeal's second amended complaint for failure to state a claim upon which relief can be granted. The Court has jurisdiction over McNeal's federal and state law claims pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons explained below, the Court denies UFCW's motion to dismiss and grants in part and denies in part Safeway's motion to dismiss.

PAGE 1 – OPINION AND ORDER

BACKGROUND[1]

## I.    FACTS

McNeal is a Black man who, in November 2019, started working as a checker at Safeway's store in Troutdale, Oregon. (Second Am. Compl. ("SAC") ¶¶ 60, 98, ECF No. 29.) At all times relevant to this litigation, McNeal and other Safeway employees were members of UFCW, which maintained a collective bargaining agreement ("CBA") with Safeway. (*Id.* ¶¶ 26-40, 76, 106-07.)

In August 2023, McNeal was involved in an incident with two groups of customers at his register. (*Id.* ¶¶ 1-25.) The first group of customers complained and demanded a manager because McNeal bagged their groceries in Safeway's plastic shopping bags instead of their "personal reusable bags," which "emitted strong odor and were bundled into one." (*Id.* ¶¶ 1-3.) McNeal responded that he would call a manager after assisting a second group of customers, who only had a "few items." (*Id.* ¶ 4.) The second group of customers, however, also "became aggressive," insulted McNeal, and "demanded a manager during and after their transaction." (*Id.* ¶ 5.)

Carmen Pennie ("Pennie"), a manager, overheard the disturbance and responded by siding with the customers and yelling at McNeal to leave and that it was "all [his] fault." (*Id.* ¶¶ 6-7.) The second group of customers were "encouraged by . . . Pennie's response, [and]

---

[1] The Court draws these facts from McNeal's second amended complaint and materials that McNeal incorporated therein by reference. *See Tohono O'odham Nation v. U.S. Dep't of the Interior*, 138 F.4th 1189, 1194 n.4 (9th Cir. 2025) ("[A district court's] review of a Rule 12(b)(6) motion to dismiss is limited to the complaint, materials incorporated by reference into the complaint, and matters of which [it] may take judicial notice.") (simplified) (quoting *Mauia v. Petrochem Insulation, Inc.*, 5 F.4th 1068, 1071 (9th Cir. 2021)); *see also supra* note 4 (addressing UFCW's exhibit and request for consideration under the incorporation by reference doctrine).

intensified their aggression toward [McNeal], including verbal abuse and threats of physical harm." (*Id.* ¶ 8.)

Fearing for his safety, McNeal headed for the exit where "two minors . . . appeared from within the store and began addressing the [second group of customers'] behavior and threats." (*Id.* ¶¶ 9-10.) Although McNeal attempted to defuse the situation and redirect the minors, the second group of customers continued to be hostile and used the "N[-]word" in McNeal's direction, which caused a "physical altercation [to] erupt[]" between the minors and customers. (*Id.* ¶¶ 11-12.)

Law enforcement responded to the scene but did not arrest or charge McNeal. (*Id.* ¶ 16.) Pennie, however, blamed McNeal for the altercation, yelled at him to "clock out and go home," and failed to "document the racial slurs or threats," take any "action to prevent th[e] customers from returning," or enforce Safeway's "zero-tolerance policy prohibiting discrimination, harassment, and workplace violence by customers, employees, or vendors." (*Id.* ¶¶ 13, 18-19, 22-24.)

In September 2023, McNeal attended meetings with Safeway's store director, Benny Quintanilla ("Quintanilla"), one of his union stewards,[2] Kelly Pagliaro ("Pagliaro"), and Safeway's head of security and loss prevention, Doug Stewart ("Stewart"), who later "claimed to act on behalf" of Safeway's human resources ("HR") department.[3] (*Id.* ¶¶ 26-30, 57, 66-67.) At

---

[2] "Stewards are not simply employees—although they are that—they are also representatives of the union." *United Bhd. of Carpenters & Joiners of Am. v. Metal Trades Dep't, AFL-CIO*, 770 F.3d 846, 850 (9th Cir. 2014) (simplified). "As representatives of the union, stewards are bound by its duty to represent the rank-and-file members of the bargaining unit fairly." *Id.*

[3] The Court notes that McNeal's second amended complaint does not include a paragraph fifty-eight, and incorrectly identifies paragraph twenty-nine as paragraph thirty-nine. (SAC at 8, 16-17.)

these meetings, McNeal provided a detailed account of the August 2023 incident, and complained that Safeway's management started reducing his work hours after the incident. (*Id.* ¶¶ 26-27.)

Quintanilla never investigated whether McNeal's managers retaliated against him by reducing his hours and instead denied that McNeal's managers had done so and issued McNeal a disciplinary write-up from "HR" regarding the August 2023 incident. (*Id.* ¶¶ 27-31.) McNeal's disciplinary write-up, which Safeway based on Stewart's "false" and "misleading account," faulted McNeal for refusing to bag the customers' groceries in their reuseable bags, "escalat[ing] the situation," and "follow[ing] the customers toward the door where the fight broke out." (*Id.* ¶¶ 30-31.) Despite acknowledging that the write-up "misrepresented the incident," Pagliaro "provided no verbal or procedural support to [McNeal] in contesting or correcting it." (*Id.* ¶¶ 32, 40-43.) Believing that McNeal suffered from a "germ phobia" and a similar incident was "going to happen again," Quintanilla also pressured McNeal to transfer departments to a less desirable position. (*Id.* ¶¶ 33-34, 37-39, suggesting that the transfer would have reduced McNeal's "job security").

In the months that followed, Pennie and other Safeway employees continued to subject McNeal to hostile and retaliatory working conditions and engaged in a "coordinated effort to fabricate grounds" for terminating his employment. (*Id.* ¶¶ 48, 52, 54.) In October 2023, for example, Safeway's Person-In-Charge ("PIC"), Jnet Pfeiffer ("Pfeiffer"), authored a "false and biased" write-up about an incident involving McNeal and asked Safeway to stop scheduling McNeal to work during her shifts. (*Id.* ¶¶ 44-47, 49-50.) Pfeiffer also received support from (1) Pennie, who unsuccessfully attempted to "solicit a false statement against [McNeal] from [his] coworker," and (2) union steward Jeremiah Renfrow ("Renfrow"), who told McNeal that

he could "remain on shift" but "later submitted a contradictory write-up accusing [him] of insubordination and falsely claiming [that he] exhibited a pattern of unhealthy behavior." (*Id.* ¶¶ 48, 50, 57.)

Safeway did not conduct any formal investigation of Pfeiffer's allegations regarding her October 2023 incident with McNeal and ignored "relevant documentation" that was favorable to McNeal's position. (*Id.* ¶¶ 52, 54-55.) Safeway simply "honored . . . and adjusted scheduling according[]" to Pfeiffer's request, which in turned "deprived [McNeal] of fair scheduling opportunities" and caused him to "suffer[] financial loss due to [his] reduced hours." (*Id.* ¶¶ 51, 53.)

In December 2023 and January 2024, McNeal requested and eventually received access to his personnel file, which he reviewed and included "previously unknown statements [from] managers and coworkers that supported his account of the August 12, 2023 incident and others." (*Id.* ¶¶ 60-63.) Shortly thereafter, McNeal contacted Safeway's labor relations manager, Jessica Yoder ("Yoder"), because he believed that Safeway was subjecting him to a "hostile work environment and retaliation" and wanted to "file a formal complaint." (*Id.* ¶¶ 63, 65-66.) McNeal also informed Pagliaro that he wanted the union to pursue a related grievance on his behalf. (*Id.* ¶¶ 68-69.)

UFCW never filed any grievances on McNeal's behalf and thus he was "unable to formally pursue redress through the union's process." (*Id.* ¶¶ 69, 102.) Pagliaro and Pagliaro's union "lead," however, discussed McNeal's schedule during meetings with McNeal and Quintanilla in March 2024, and Quintanilla "verbally reinstated" McNeal's hours later that same day. (*Id.* ¶¶ 69-74.)

///

PAGE 5 – OPINION AND ORDER

McNeal remained concerned about his "job status" and "future retaliation" because he did not receive any "formal documentation" and needed to rely on Quintanilla's "vague" verbal "reinstatement" of his hours. (*Id.* ¶¶ 69-74.) McNeal was also concerned that Pagliaro and Pagliaro's lead failed to include him in "mandatory fact-finding meetings," and that despite Stewart's involvement in the August 2023 customer incident and disciplinary write-up, Stewart purported to "act on behalf of HR" in responding to McNeal's complaint.[4] (*Id.* ¶¶ 66-67, 76.) Further, McNeal was unclear about his schedule because Safeway failed to provide sufficient notice or compensation for "last-minute changes," and "later disciplined [him] for alleged no-call/no-show absences that resulted from the lack of schedule clarity and coordination." (*Id.* ¶¶ 77-80.)

In late March 2024, an unnamed assistant manager issued McNeal a write-up for insubordination, reassigned McNeal to a "less desirable position," and informed Safeway that he "did not want [McNeal] on his closing shift due to [McNeal's] clear refusal to follow directions." (*Id.* ¶¶ 85-86, 88.) The assistant manager issued McNeal a write-up because he asked McNeal to leave the register to return perishable items and McNeal initially "declined" to do so, citing the

---

[4] In addition to claiming that UFCW failed to act in good faith and breached its duty of fair representation, McNeal cites and quotes provisions of the CBA that UFCW allegedly violated. (SAC ¶¶ 43, 76, 82, 106-07, citing "Article 19.2 of the [CBA] . . . which mandates that the grievant be included in any mandatory fact-finding meeting," quoting "Article 4.12 (Weekly Guarantee)," and relying on McNeal's "right to fair scheduling as defined in the CBA"). UFCW addresses these CBA provisions in its motion and argues that the Court may consider the CBA at this stage under the incorporation-by-reference doctrine. (Def. UFCW's Mot. Dismiss ("UFCW's Mot.") at 11-13, 15 & Ex. 1 at 1-47, ECF No. 32-1.) The Court agrees. *See Valdez v. United Airlines Holdings, Inc.*, No. 23-2825, 2025 WL 1513778, at *2 n.4 (9th Cir. May 28, 2025) (listing "characteristics [that the Ninth Circuit] ha[s] described as sufficient for incorporation by reference . . . , such as the complaint necessarily relying upon a document's contents, the document's authenticity not being in question, and there being no disputed issues as to the document's relevance" (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010))).

conflicting "direction" that he previously received during his incident with Pfeiffer. (*Id.* ¶¶ 85-87.)

In May 2024, McNeal filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination, retaliation, and a hostile work environment. (*Id.* ¶ 98.) McNeal's charge focused on Safeway's response to the August 2023 incident. (*Id.*)

Over the next several months, McNeal reported an incident in which a customer made a "racially charged statement" about him having a "chip on his shoulder . . . because he's Black," and expressed his ongoing concerns about his schedule, the verbal reinstatement of his hours, and union representatives' failure to address his complaints. (*Id.* ¶¶ 93-97, 99-109.) Rather than honoring McNeal's work "availability, seniority, and right to fair scheduling," Safeway's management and union representatives threatened to terminate McNeal based on fifteen "no-call/no-shows tied to previously unresolved scheduling disputes." (*Id.* ¶¶ 107-08; *see also id.* ¶¶ 100-03, alleging that during a July 31, 2024 telephone meeting, Yoder advised McNeal of her disputed position that Safeway did not owe him any compensation because his availability was limited to four hours on Wednesday through Saturday evenings, there was "no guarantee of hours because of [McNeal's] restriction," and beginning April 2024, Safeway scheduled McNeal to work on Saturday evenings but he was "not working those shifts" or "calling out for those shifts").

///

///

///

///

In mid-September 2024, McNeal "experienced a severe sickle cell-related pain crisis."[5] (*Id.* ¶ 110.) McNeal consulted with a physician and submitted his resignation in mid-November 2024. (*Id.*)

## II.    PROCEDURAL HISTORY

McNeal originally filed this lawsuit in Multnomah County Circuit Court on August 19, 2024. (*See* UFCW's Opp'n Pl.'s Mot. Remand Ex. 1 at 1-2, ECF No. 10 at 4-5, attaching the complaint). On February 25, 2025, less than thirty days after McNeal filed an amended state court complaint naming UFCW as a defendant and asserting claims under Title VII of the Civil Rights Act ("Title VII"), UFCW timely removed McNeal's lawsuit to this district based on federal question jurisdiction. *See* 28 U.S.C. § 1331 (federal question jurisdiction); *id.* § 1367(a) (supplemental jurisdiction), *id.* § 1441(a) (general removal statute), *id.* § 1446 (removal procedures).

Following removal, McNeal moved to remand his case to state court under 28 U.S.C. § 1447(c). On June 2, 2025, the Court denied McNeal's motion to remand because it determined that it had federal question jurisdiction over McNeal's Title VII claim under 28 U.S.C. § 1331. *See McNeal v. Safeway, Inc.*, No. 3:25-cv-00314-SB, 2025 WL 1554474, at *8-13 (D. Or. June 2, 2025); *see also* 42 U.S.C. § 2000e-5(f)(3) ("Each United States district court . . . shall have

---

[5] "In a sickle cell crisis, the different organs throughout the body, including the brain and the heart and muscles, all start to be deprived of oxygen because the blood is clogged up by the sickle cells and not flowing freely." *Afolayan v. Dep't of Just.*, No. 2021-1452, 2022 WL 1124965, at *2 (Fed. Cir. Apr. 15, 2022) (simplified). "[C]rises may occur with the onset of dehydration, stress, illness, and change in temperature, among others." *Tillery v. Kalinski*, No. 5:17-cv-00194, 2020 WL 400647, at *2 (W.D.N.C. Jan. 23, 2020) (simplified); *see also Afolayan*, 2022 WL 1124965, at *2 (noting that "conditions that could be harmful for people with sickle cell trait include low oxygen levels in the air (e.g., when mountain climbing, exercising extremely hard in military boot camp, or training for an athletic competition), dehydration, and high altitudes (e.g., flying, mountain climbing, or visiting a city at a high altitude)") (simplified).

jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed[.]").

On June 24, 2025, McNeal filed his operative second amended complaint. (SAC ¶¶ 1-113; ECF Nos. 27-29.) McNeal asserts claims against Safeway for violations of Title VII and Oregon Revised Statutes ("ORS") §§ 166.065, 653.450, 653.455, 659A.030, 659A.112, and 659A.199, as well as defamation and constructive discharge claims. (Id. ¶¶ 25, 37-39, 43, 56-57, 61, 81, 98, 110-12.) McNeal also asserts claims against UFCW for breach of the duty of fair representation.[6] (Id. ¶¶ 43, 82.)

///

---

[6] McNeal confirms in his response that he only brings a claim against UFCW for breach of the duty of fair representation. (See Pl.'s Resp. & Exs. Supp. Pl.'s Opp'n Def. Safeway's Mot. Dismiss ("Pl.'s Resp. Safeway's Mot.") at 11, ECF No. 34, stating that McNeal's claim for breach of the duty of fair representation is "asserted solely against UFCW . . . and its designated representatives[,] not Safeway," and McNeal does not allege that Safeway is "liable under the fair representation doctrine"). Safeway notes McNeal's "concession" but "requests an Order expressly dismissing the claim given the Second Amended Complaint's failure to clearly assert which defendant from which [McNeal] seeks relief." (Def. Safeway's Suppl. Reply Supp. Partial Mot. Dismiss ("Safeway's Reply") at 4-5, ECF No. 41.) Unlike McNeal's harassment claim against Safeway under ORS § 166.065, McNeal's second amended complaint aligns with his confirmation that he is not attempting to assert a claim against Safeway for breach of the duty of fair representation. Cf. supra Part II.A (issuing an order comparable to the one requested based on a direct conflict between McNeal's pleading and subsequent concession). Thus, the Court denies as moot Safeway's motion to dismiss McNeal's claim for breach of the duty of fair representation (see Def. Safeway's Partial Mot. Dismiss Pl.'s Compl. ("Safeway's Mot.") at 2, 13, ECF No. 31), and does not treat this claim as a "hybrid fair representation/§ 301 [claim] against [his] union and [his] employer, alleging that [his] union breached its duty of fair representation in violation of the National Labor Relations Act [(NLRA)] and that [his] employer breached its [CBA] . . . in violation of § 301(a) of the Labor Management Relations Act." Bliesner v. Commc'n Workers of Am., 464 F.3d 910, 911, 913-14 (9th Cir. 2006) (addressing sequencing in "hybrid" suits); see also Casumpang v. Haw. Com. & Sugar Co., 712 F. App'x 710, 710 (9th Cir. 2018) ("Because [this] claim challenges the union's representation of the [plaintiff] in grievance-and-arbitration procedures, the district court properly characterized the claim as a fair representation claim[.]") (simplified).

PAGE 9 – OPINION AND ORDER

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## DISCUSSION

UFCW moves to dismiss McNeal's claim for breach of the duty of fair representation on the grounds that it is largely time-barred and otherwise fails to state a claim upon which relief can be granted. (UFCW's Mot. at 1-2, 7-8, 16.) Safeway similarly moves to dismiss on the grounds that McNeal fails to state plausible claims for harassment, disability discrimination, defamation, "predictive scheduling violations," and constructive discharge.[7] (Safeway's Mot. at 2, 13.)

///

///

---

[7] Safeway does not move to dismiss McNeal's race discrimination, hostile work environment, retaliation, and whistleblower claims under Title VII and ORS §§ 659A.030 and 659A.199. (Safeway's Mot. at 2 & n.1.)

## I.    UFCW'S MOTION

The Court begins by addressing McNeal's claim that UFCW breached its duty of fair representation.

### A.    Applicable Law

"The duty of fair representation is a judicially established rule imposed on labor organizations because of their status as the exclusive bargaining representative for all of the employees in a given bargaining unit." *Beck v. United Food & Com. Workers Union, Loc. 99*, 506 F.3d 874, 879-80 (9th Cir. 2007) (quoting *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985)); *see also Am. Airlines Flow-Thru Pilots Coal. v. Allied Pilots Ass'n*, No. 21-16131, 2022 WL 4481533, at *1 (9th Cir. Sept. 27, 2022) ("The duty is a judicially crafted cause of action . . . [with] its origin . . . in racial discrimination[.]" (citing *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 194-96, 203-04 (1944)))). "Because a union has exclusive statutory authority to represent its members, it has a corresponding legal obligation 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Demetris v. Transp. Workers Union of Am., AFL-CIO*, 862 F.3d 799, 804 (9th Cir. 2017) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).

To state a claim for breach of a union's duty of fair representation, a plaintiff must allege facts that plausibly suggest that his union acted "arbitrarily, discriminatorily, or in bad faith." *Saliba v. Allied Pilots Ass'n*, No. 23-15631, 2024 WL 1877038, at *1 (9th Cir. Apr. 30, 2024). In *Saliba*, for example, the Ninth Circuit held that the "[t]he district court properly dismissed [the self-represented plaintiff's] claims alleging that [his union] violated its duty of fair representation because [he] failed to allege facts sufficient to show that it acted arbitrarily, discriminatorily, or in bad faith." *Id.* (citing *Demtris*, 862 F.3d at 804-05). The Ninth Circuit noted that "a union's

conduct will only be deemed arbitrary if [it is] 'so far outside' a 'wide range of reasonableness'
that it is 'wholly irrational[.]'" *Id.* (quoting *Demtris*, 862 F.3d at 804-05); *see also Petit v. Air
Line Pilots Ass'n*, No. 21-35494, 2022 WL 1638816, at *1 (9th Cir. May 24, 2022) (affirming the
district court's dismissal of a self-represented plaintiff's claim for breach of the duty of fair
representation because she "failed to allege facts sufficient to show that her union attorney's
representation of her during an arbitration hearing, or the actions of the union-appointed
arbitration board members, were arbitrary, discriminatory, or in bad faith" (citing *Beck*, 506 F.3d
at 879-80)).

    With respect to timeliness, "[t]he Supreme Court has held that the [NLRA's] . . . six-
month statute of limitations for the filing of unfair labor practice claims is applicable to suits
against a union for breach of the duty of fair representation." *Peterson*, 771 F.2d at 1251 (citing
*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65, 170-72 (1983)); *see also Muldoon
v. Teamsters Loc. 572*, No. 23-55448, 2024 WL 4987247, at *1 (9th Cir. Dec. 5, 2024) (holding
that the "district court correctly determined that [the self-represented plaintiffs'] duty of fair
representation claim was untimely" (first citing *DelCostello*, 462 U.S. at 164-65, 170-72; and
then citing 29 U.S.C. § 160(b))); *Casumpang*, 712 F. App'x at 710 (citing the same sources).[8]
"[I]n a duty of fair representation case, the six-month period generally begins to run when an

---

[8] Section 160(b) provides that "no complaint shall issue based upon any unfair labor
practice occurring more than six months prior to the filing of the charge with the [National Labor
Relations] Board and the service of a copy thereof upon the person against whom such charge is
made[.]" 29 U.S.C. § 160(b); *see also Haskin v. US Airways*, 689 F. App'x 515, 516 (9th Cir.
2017) (holding that the "district court properly granted summary judgment on [the self-
represented plaintiff's] breach of the duty of fair representation claim because [he] failed to file
his action within six-months after the union's time for asserting the grievances had expired," and
noting that the "six-month statute of limitations [also] applies to 'hybrid claims'" (quoting *Lea v.
Rep. Airlines, Inc.*, 903 F.2d 624, 633 (9th Cir. 1990))); *Sinyan v. Swedish Hosp. Med. Ctr.*, 482
F. App'x 209, 211 (9th Cir. 2012) (making the same observation about a "hybrid fair
representation and [CBA] claim").

employee knows or should know of the alleged breach of duty of fair representation by a union."

*Haskin*, 689 F. App'x at 516 (quoting *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509-11 (9th Cir. 1986)).

### B.    Analysis

UFCW argues that McNeal's claim for breach of the duty of fair representation is largely barred by the six-month statute of limitations and otherwise fails to state a plausible claim. (UFCW's Mot. at 1-2, 7-8, 16; Def. UFCW's Reply Supp. Mot. Dismiss ("UFCW's Reply") at 2, ECF No. 42.)

### 1.    Timeliness

At the pleading stage and on the current record, the Court is unable to find that the six-month statute of limitations bars the allegations underlying McNeal's claim that UFCW breached its duty of fair representation. The Court therefore denies UFCW's motion to dismiss on this ground.

UFCW initially "submits that the proper date for calculating the six-month limitations period is February 5, 2025," because that is the date on which McNeal filed his amended state court complaint naming UFCW for the "first time as a defendant." (UFCW's Mot. at 7.) UFCW adds that if this is correct, "any alleged violations of the duty of fair representation that occurred before August 5, 2024, are time barred." (*Id.*) At the same time, UFCW recognizes that the Court may need to "grant McNeal leeway in light of his decision to represent himself." (*Id.* at 8.) With that in mind, UFCW assumes that August 19, 2024 (i.e., the date on which McNeal commenced this action in state court) is the proper date for calculating the six-month limitations period. (*Id.*; *see also* UFCW's Reply at 2, proceeding only on this assumption). UFCW in turn argues that McNeal's claim is untimely to the extent that he relies on conduct predating February 19, 2024,

or more than six months before he originally filed his lawsuit in state court.[9] (*See* UFCW's Mot. at 8 & UFCW's Reply at 2, arguing that there are only "four possible [alleged] acts" that occurred on or after February 19, 2024, that "could conceivably violate the duty of fair representation").

McNeal does not dispute that the sixth-month statute of limitations applies to his claim against UFCW for breach of the duty of fair representation. (*See* Pl.'s Resp. & Exs. Supp. Pl.'s Opp'n Def. UFCW's Mot. Dismiss ("Pl.'s Resp. UFCW's Mot.") at 2-3, ECF No. 38, presenting McNeal's opposition to UFCW's motion to dismiss and recognizing that in *DelCostello*, the Supreme Court held that there is a "six-month limitations period"). McNeal also agrees with UFCW that his claim is based on conduct that occurred on or after February 19, 2024. (*See id.*, arguing that the second amended complaint "captures conduct occurring on or after February 19, 2024, and "alleges multiple acts of Union neglect and procedural failure occurring within this window"). Unlike UFCW, however, McNeal argues that he complained and attempted to resolve through grievance procedures an ongoing "pattern" of discriminatory and retaliatory conduct that began before February 19, 2024. (*See id.* at 3-4, arguing that UFCW "improperly narrows the scope of [McNeal's] claims" and characterizes his "allegations as "isolated incidents" while "overlook[ing] a broader pattern" of "harm arising from [the] union's ongoing breach of its duty").

---

[9] In *Casumpang*, the district court based the timeliness of a self-represented plaintiff's claim on when he filed his amended complaint. *See* 712 F. App'x at 710 ("Because [the self-represented plaintiff's] cause of action accrued when he learned of the union's decision not to arbitrate, . . . which occurred no later than July 3, 2012, when [the union] denied the appeal of his remaining claims, his first amended complaint filed on July 22, 2013 was untimely.") (simplified). The district court also held that the "amended complaint [did] not relate back to the original complaint under [Rule] 15(c), and [the plaintiff did] not dispute [that] conclusion on appeal." *Id.* at 710 n.1.

UFCW fails to demonstrate that McNeal's claim is untimely and therefore subject to dismissal at the pleading stage. "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *Thomas v. County of Humboldt*, 124 F.4th 1179, 1191 (9th Cir. 2024) (quoting *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013)). That is not the case here.

As discussed, "in a duty of fair representation case, the six-month [limitations] period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Haskin*, 689 F. App'x at 516 (quoting *Galindo*, 793 F.2d at 1509-11). "A reasoned analysis of the question when a [plaintiff's] duty of fair representation claim accrues must focus on the context in which the [the plaintiff's] claim arose." *Galindo*, 793 F.2d at 1509.

In *Mediran v. International Ass'n of Machinists & Aerospace Workers*, 425 F. App'x 550, 551 (9th Cir. 2011), the Ninth Circuit addressed a question similar to the one presented here, i.e., whether the "district court erred when it determined that on the face of the pleadings, the statute of limitations barred [the plaintiff's] duty of fair representation claim against [his union]." *Id.* The Ninth Circuit held that the district court erred in making this determination because the plaintiff "pled enough to avoid judgment on the pleadings[.]" *Id.* The Ninth Circuit noted that "when a union does not process a grievance for an extended period, the limitations period may well commence, even if the union has not expressly stated that it will not process the grievance." *Id.* (first citing *Lacina v. G-K Trucking*, 802 F.2d 1190, 1192 (9th Cir. 1986), *vacated and remanded on other grounds*, 483 U.S. 1002 (1987); and then citing *Galindo*, 793 F.2d at 1509). By comparison, "[w]here a union not only fails to act but also, by making numerous false

representations, misleads the employee into believing that the claim is being processed, . . . it cannot be said that the employee knew or should have known that the union had breached its duty to fairly represent him." *Id.* (citing *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1049-50 (9th Cir. 1987)).

Having recognized this "kind of behavior as a basis for equitable tolling of the statute of limitations," the Ninth Circuit held that the plaintiff "sufficiently and plausibly pled that over the long period of delay [his union's] representatives continued to inform him that his claim was going forward and being processed[, and] [o]nce they admitted that it was not, he filed this action within six months." *Id.* As a result, the Ninth Circuit held that the district court erred in granting judgment on the pleadings as to the plaintiff's claim for breach of the duty of fair representation. *Id.*

More recently, in *Andersen-Swiderski v. Kaiser Permanente Southern California Optometric Ass'n*, 813 F. App'x 267, 269 (9th Cir. 2020), the Ninth Circuit made comparable findings in a plaintiff's "hybrid" lawsuit against an employer and union. *Id.* Reviewing a decision at summary judgment, the Ninth Circuit "agree[d] with the district court that the statute of limitations was tolled by [the plaintiff's] 'good faith attempts to resolve her claim through grievance procedures.'" *Id.* (simplified) (quoting *Galindo*, 793 F.2d at 1510). The Ninth Circuit explained that the "[t]he delay was 'only a few months,' . . . [and the] [a]ppellants cite[d] no evidence indicating that [the plaintiff] pursued non-judicial resolution of her dispute in bad faith, nor that the non-judicial grievance procedures she followed could not have resulted in the relief she sought." *Id.* (first quoting *Galindo*, 793 F.2d at 1510 n.4; and then citing *Galindo*, 793 F.2d at 1510 n.5).

///

Like the cases above, McNeal's well-pleaded factual allegations suggest that he attempted in good faith to resolve his claims through grievance procedures, that there was a delay of only a few months, and that any delay was due to developing events at work, related inquiries and interviews, and McNeal's attempts to contact and obtain information from his union representatives with respect to whether the union could or would move forward and process his grievances.

Specifically, McNeal alleges that in mid-August 2023, he was involved in a work incident in which customers called him the "N[-]word" and subjected him to "verbal abuse and threats of physical harm." (SAC ¶¶ 4-5, 8, 11-12, alleging that the customers "used a racial slur[] . . . in [McNeal's] direction"). In early and late September 2023, McNeal, McNeal's union representative (Pagliaro), and Safeway's store director (Quintanilla) and representatives attended initial and follow-up meetings regarding the incident. (*Id.* ¶¶ 26, 28-31, noting that Stewart attended the first meeting, and an unnamed "assistant manager" attended the follow-up meeting). McNeal also met "privately" with Quintanilla the day before the follow-up meeting and reported that after the incident, management retaliated against him by reducing his work hours. (*Id.* ¶ 27.) Quintanilla "denied the reduction and failed to investigate whether it was retaliatory" and issued McNeal a disciplinary write-up the next day based on the August 2023 customer incident. (*Id.* ¶¶ 27-31.) Quintanilla also "pressure[d]" McNeal to transfer departments to a less desirable position. (*See id.* ¶¶ 33, 39-40, alleging that the proposed transfer would have led to reduced "job security").

McNeal disputed the "accuracy and validity" of Safeway's disciplinary "write-up, challenging both its content and its existence." (*Id.* ¶ 29.) McNeal believed that Safeway's write-up was based on Stewart's "knowingly false and misleading" account and that Quintanilla's

actions and inactions amounted to additional discriminatory and retaliatory treatment. (*Id.* ¶¶ 36-39.)

Further, in October 2023 and January 2024, respectively, McNeal discovered that (1) the manager who intervened and failed adequately to document the August 2023 incident (Pennie) "attempted to solicit a false statement against [McNeal] from [a] coworker," which Pennie intended to use for disciplinary purposes, and (2) several managers and coworkers previously provided statements in support of his account of what occurred during the August 2023 incident. (*See id.* ¶¶ 6-9, 13, 20-24, 36-39, 48, 60-63, noting that McNeal began asking to review his personnel file, which included the statements, in December 2023, and Safeway initially denied his request).

McNeal alleges that both "[d]uring and after" his September 2023 follow-up meeting, "Pagliaro, acting as [UFCW's] representative . . . , took no meaningful steps to dispute or correct [his] false disciplinary write-up . . . , despite acknowledging it misrepresented the [August 2023] incident." (*Id.* ¶ 41.) Notably, McNeal also alleges that "[b]eginning as early as September 2023, [he] attempted to maintain communication with . . . Pagliaro regarding ongoing incidents [at work]." (*Id.* ¶ 59.) He often needed to "resort[] to using email to document [his] concerns and seek assistance" because Pagliaro's "[c]ommunication . . . was inconsistent and unresponsive." (*Id.*) When Pagliaro's "limited responsiveness" continued despite McNeal's repeated "attempt[s] to connect" with Pagliaro and reach "other union representatives," McNeal asked Pagliaro's supervisor for "new union representation due to a lack of advocacy." (*Id.* ¶ 68; *see also id.* ¶¶ 63, 65, 68, alleging that McNeal sent an email because the labor relations manager's voicemail was "full" and left a voicemail after attempting to reach "other union representatives" in lieu of Pagliaro).

In mid-February 2024, shortly after contacting Pagliaro's supervisor and about a month after his delayed discovery of corroborating evidence in his personnel file, McNeal received a call from Pagliaro and "requested to pursue a grievance" related to Safeway disciplinary actions and McNeal's "loss of wages." (*Id.* ¶¶ 60-63, 68-69.) The next month, McNeal met with Pagliaro and Pagliaro's "lead" to "report issues involving harassment and a hostile work environment." (*Id.* ¶¶ 70-71.) McNeal also responded to Pagliaro and Pagliaro's lead's request for evidence supporting his claim of "retaliatory scheduling." (*Id.*) In the end, the union never filed any grievances on McNeal's behalf, and McNeal was "unable to formally pursue redress through the union's process." (*Id.* ¶ 69.) Less than six months later, McNeal filed this lawsuit in state court.

"At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff[.]" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016)). Doing so here supports that McNeal's good faith attempts to resolve his claims through grievance procedures tolled the six-month statute of limitations. *See Andersen-Swiderski*, 813 F. App'x at 269 (making a similar finding (citing *Galindo*, 793 F.2d at 1510)). Specifically, "[t]he delay was 'only a few months,'" and UFCW does not argue that McNeal, who pursued a grievance after discovering corroborating evidence and often failed to reach or obtain information from his union representatives, "pursued non-judicial resolution of [his] dispute in bad faith, nor that the non-judicial grievance procedures [that he] followed could not have resulted in [any of the] relief [he] sought."[10] *Id.* (first quoting *Galindo*, 793 F.2d at 1510

---

[10] The CBA that UFCW maintained with Safeway includes provisions on employees' work hours, schedules, and compensation, as well as an anti-discrimination provision: "The Employer and the Union agree that each will fully comply with applicable laws and regulations regarding discrimination and will not discriminate against any employee . . . because of such

n.4; and then citing *Galindo*, 793 F.2d at 1510 n.5); *see also Mediran*, 425 F. App'x at 551

(reversing grant of judgment on the pleadings and considering whether the union "fail[ed] to act"

and also suggesting that a court may consider whether the employee believed that the union was

processing or may process his claim).

UFCW does not address tolling and largely fails to address the tolling-related allegations

highlighted above. Instead, UFCW declines to "concede" that McNeal's "allegations pre-dating

February 2024 articulate viable claims" and requests that the Court evaluate McNeal's post-

February 19, 2024 allegations in isolation. (*See* UFCW's Mot. at 7-8 & UFCW's Reply at 2,

arguing summarily that "at most four possible acts . . . could have violated the Union's duty").

Under these circumstances, the Court denies UFCW's motion to dismiss on timeliness grounds.

*See Galindo*, 793 F.2d at 1509 ("In determining when the six-month period accrues, the simplest

case is one where a union decides not to file a grievance; the cause of action generally accrues

when the employee learns or should have learned of the union's decision.") (simplified); 5B

Charles Alan Wright et al., *Federal Practice and Procedure* § 1357 (4th ed. Sept. 2025 update)

(recognizing that a "district court in its discretion may . . . decid[e] that a motion for summary

judgment . . . is a more appropriate procedural device" to address an affirmative defense).

### 2.    Plausibility

The Court turns to UFCW's argument that McNeal otherwise fails to state a claim for

breach of the duty of fair representation. As explained below, the Court finds that McNeal states

a plausible claim.

///

---

person's race, religion, color, national origin, sex, age, or disability." (UFCW's Mot. Ex. 1 at 1,
5.)

"A union breaches its duty of fair representation when its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *Rollins v. Cmty. Hosp. of San Bernardino*, 839 F.3d 1181, 1186 (9th Cir. 2016) (quoting *Beck*, 506 F.3d at 879). In *Rollins*, the plaintiff asserted that the "[u]nion's handling of her . . . grievance was 'arbitrary' because it failed to investigate adequately." *Id.* The Ninth Circuit explained that "[a] union acts 'arbitrarily' when it simply ignores a meritorious grievance or handles it in a perfunctory manner." *Id.* (quoting *Peterson*, 771 F.2d at 1253-54). The Ninth Circuit further explained that "to avoid breaching the duty of fair representation, a [plaintiff's] [u]nion must 'conduct a minimal investigation of a grievance that is brought to its attention.'" *Id.* (quoting *Peterson*, 771 F.2d at 1254).

Given that the plaintiff "submitted enough evidence [to prove] the Union processed her grievance 'in a perfunctory manner,'" the Ninth Circuit held that the union was not entitled to summary judgment on the plaintiff's claim for breach of the duty of fair representation. *Id.* (quoting *Peterson*, 771 F.2d at 1254). The Ninth Circuit "reach[ed] this conclusion for three reasons": (1) the union "never seriously considered [the] rights" at issue, (2) the union "improperly lumped [the plaintiff] with other, non-similarly situated employees," and (3) although the plaintiff "demonstrat[ed] that she had an important and meritorious grievance" and thus the union was required to "provide a 'more substantial' reason for failing to pursue her claim," the union provided only "factually contested reasons for rejecting [it.]" *Id.* at 1187 (quoting *Gregg v. Chauffeurs, Teamsters & Helpers Union Loc. 150*, 699 F.2d 1015, 1016 (9th Cir. 1983)).

Most of these observations apply equally to McNeal's allegations, which the Court must accept as true at the pleading stage. In addition to the allegations above, McNeal alleges that

Pagliaro, Yoder, and others knew about his reports of "escalating retaliation and discrimination," "scheduling concerns," and his complaints about "lost hours," Quintanilla's verbal reinstatement, and his "grievances" and "concerns" were "ignored," "unresolved," and "unacknowledged." (SAC ¶¶ 72, 80, 82, 96, 99, 102, 105, 108.) McNeal also alleges that Pagliaro, Yoder, and others took "no remedial steps," "disregarded [his] reports," made "[n]o meaningful effort[]" to "address [his] concerns or mitigate harm," "failed to act or investigate or resolve the underlying issues," allowed his "grievance [to be] dismissed without merit," and failed to investigate "how a five-year employee was accused of [fifteen] no-call/no-shows without documented evidence." (*Id.*)

McNeal plausibly alleges that UFCW acted "act[ed] 'arbitrarily' when it simply ignore[d] [his] meritorious grievance or handle[d] it in a perfunctory manner." *Rollins*, 839 F.3d at 1186 (quoting *Peterson*, 771 F.2d at 1253-54). Neither McNeal's allegations nor the parties' motion papers demonstrate that UFCW "conduct[ed] a 'minimal investigation' of grievance[s] that [were] brought to its attention." *Id.* (quoting *Peterson*, 771 F.2d at 1254). McNeal's September 2023 write-up, which was based an individual's inaccurate reports about an incident in which customers called McNeal a racial slur, is particularly noteworthy. (SAC ¶¶ 11, 17, 22-23, 26, 29-33, 36-37.)

In arguing that McNeal's breach of the duty of fair representation is implausible, UFCW addresses this write-up by citing only the "good faith" advice that McNeal received during a February 2024 call with Pagliaro, and after complaining about Pagliaro's lack of responsiveness. (*See* UFCW's Reply at 4, turning to Pagliaro's "advice" about the "September 2023 write up"). UFCW notes that Pagliaro advised McNeal that she did not "have a lot of tools" (i.e., not no tools) to "fight from the union side of things" and recommended that McNeal continue

contacting Yoder, who "advise[d] the store management on what kind of discipline is handed out" and possessed the "ability to remove that [write-up] from [his] record[.]" (*Id.*) Pagliaro's advice, coupled with the allegations above about Pagliaro, Yoder, and others' inaction and the corroborating evidence that McNeal discovered, all of which UFCW fails adequately to address, suggest that UFCW ignored or perfunctorily dismissed without investigation McNeal's "important and meritorious" complaints. *See generally Addington v. US Airline Pilots Ass'n*, 791 F.3d 967, 982-73 (9th Cir. 2015) (noting that the duty of fair representation was "first articulated" in a case with a "troubled history" of "racial discrimination" (citing *Steele*, 323 U.S. at 194-204)).

For all of these reasons, the Court concludes that at the pleading stage, McNeal has stated a timely and plausible claim against UFCW for breach of the duty of fair representation. The Court therefore denies UFCW's motion to dismiss.[11]

## II. SAFEWAY'S MOTION

Safeway moves under Rule 12(b)(6) to dismiss some, but not all, of the claims that McNeal asserts. (Safeway's Mot. at 2.) Specifically, Safeway argues that McNeal fails to state claims for harassment, disability discrimination, defamation, predictive scheduling violations, and constructive discharge. (*Id.*)

---

[11] UFCW relies in part on exhibits that McNeal submitted in support of his opposition to Defendants' pending motions. (*See* UFCW's Reply at 2-3.) McNeal's exhibits include a transcript of his call with Pagliaro, which UFCW "[p]resum[es] for the sake of argument [is] . . . accurately transcribed . . . [and] properly before the Court[.]" (*Id.* at 2-3.) In evaluating Defendants' motions, the Court finds it unnecessary to rely on McNeal's exhibits or resolve whether they are properly before it. The Court also points out that even when it is appropriate to "assume an incorporated document's contents are true for purposes of a motion to dismiss under Rule 12(b)(6)[,] . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003 (simplified). "This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage." *Id.* (simplified).

A.    **Harassment**

McNeal asserts claims against Safeway for harassment under ORS § 166.065. (*See*

SAC ¶¶ 25, 37-38, representing that McNeal "brings claims" and "this action" against Safeway

for "harassment under ORS 166.065," and basing such claims on Quintanilla and Stewart's

actions). The Court concludes that McNeal fails to state and cannot cure his claims under ORS

§ 166.065.

ORS § 166.065 is a criminal statute. *See* OR. REV. STAT. § 166.065(1)-(6) (describing

when a person is "criminally liable" for committing the "crime of harassment"); *see also*

*Gottfried v. St. Vincent Depaul*, No. 6:25-cv-01827-AP, 2026 WL 18819, at *7 (D. Or. Jan. 2,

2026) ("ORS 166.065 criminalizes certain acts of harassment[.]") (footnote omitted); *Smith v.*

*City of Portland*, No. 3:22-cv-00946-HZ, 2023 WL 2734804, at *2 (D. Or. Mar. 30, 2023) ("The

only liability set out in those statutes is criminal. . . . [ORS] § 166.065 defines the 'crime' of

harassment as a class B misdemeanor."). Notably, "criminal statutes generally do not give rise to

private rights of action[.]" *Bledsoe v. Jacot*, No. 24-3947, 2025 WL 1766788, at *1 (9th Cir. June

26, 2025) (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S.

164, 190 (1994)).

The parties have not cited, nor has the Court located, any case in which a court has held

that ORS § 166.065 gives rise to a private right of action. Judges from this district have held

otherwise.

In *Smith*, for example, the self-represented plaintiff asserted claims for violations of ORS

§ 166.065 and other criminal statutes, and the defendant moved to dismiss the plaintiff's claims

on the ground that the statutes did not give rise to private rights of action. 2023 WL 2734804, at

*1-2. Given that the statutes "did not expressly include a private right of action," the district

court evaluated whether the statutes impliedly gave rise to private rights of action and held that

they did not:

> [ORS] §§ 164.365, 166.065, and 163.160 do not expressly include a
> private right of action. Oregon courts have not addressed whether [ORS]
> §§ 164.365, 166.065, or 163.160 impliedly create a private right of action. This
> [c]ourt, therefore, must consider "whether the statute . . . impliedly indicates that
> the legislature intended to create or to deny such a right of action." *Henley v. U.S.*
> *Bancorp*, No. 3:19-cv-00985-AC, 2020 WL 1038086, at *13 (D. Or. Jan. 21,
> 2020) (quoting *Doyle v. City of Medford*, 337 P.3d 797, 813 (Or. 2014)), *findings*
> *and recommendation adopted*, 2020 WL 1033537, at *1 (D. Or. Mar. 2, 2020). If
> the court cannot discern any legislative intent to create or deny a private right of
> action, it [must] then consider[] whether creating such a right "would be
> consistent with the statute, appropriate for promoting its policy, and needed to
> ensure its effectiveness." *Doyle*, 337 P.3d at 813.

> [ORS] §§ 164.365, 166.065, and 163.160 do not "refer to civil liability in
> some way." *Doyle*, 337 P.3d at 803. The only liability set out in those statutes is
> criminal. Specifically, [ORS] § 164.365 defines the "crime of criminal mischief"
> as a class C felony. [ORS] § 166.065 [also] defines the "crime" of harassment as a
> class B misdemeanor[, and ORS] § 163.160 defines "the crime of assault in the
> fourth degree" as a class A misdemeanor. The only express remedy provided for
> violation of these statutes is criminal (i.e., fine, imprisonment, or both). Thus,
> there is little textual or contextual support to indicate that the legislature impliedly
> intended to create a private right of action for criminal mischief, criminal
> harassment, or criminal assault. In addition, the [c]ourt finds no availing reason to
> create a private right of action for violation of [ORS] §§ 164.365, 166.065, or
> 163.160. Oregon law provides sufficient other private actions under which
> plaintiffs may seek recovery including civil assault, battery, and various civil
> causes of action. The [c]ourt, therefore, concludes creation of a private right of
> action for violation of [ORS] §§ 164.365, 166.065, or 163.160 is unwarranted.
> Accordingly, the [c]ourt concludes Oregon has not created a private right of
> action for violations of §§ 164.365, 166.065, or 163.160 and declines to create
> private rights of action for violation of those statutes.

> Taking the facts in the light most favorable to [the] [p]laintiff, . . . the
> [c]ourt finds it is absolutely clear that the deficiencies of [the] [p]laintiff's claims
> for violation of [ORS] §§ 164.365, 166.065, or 163.160 cannot be cured by
> amendment. Accordingly, the [c]ourt grants [the] [d]efendant's Partial Motion to
> Dismiss [with prejudice].

2023 WL 2734804, at *2 (simplified).

The district court recently reached the same conclusion in *Gottfried*. In that case, the

district court screened the self-represented plaintiff's complaint for a second time under the

federal in forma pauperis statute, 28 U.S.C. § 1915, and noted the plaintiff "once again attempt[ed] to bring[] state claims under ORS 166.065 and ORS 162.375." 2026 WL 18819, at *2-3, *7. The district court explained that "ORS 166.065 criminalizes certain acts of harassment, while ORS 162.375 criminalizes the act of initiating a false report to a law enforcement agency." Id. at *7 (footnotes omitted). The district court explained that "[a]lthough both statutes provide for criminal liability and penalties, neither statute creates a private right of action for civil plaintiffs to pursue." Id. (first citing Doyle, 337 P.3d at 805; and then citing Smith, 2023 WL 2734804, at *2). The district court also emphasized that "Oregon law provides for ample 'private actions under which [a civil litigant] may seek recovery.'" Id. (citation omitted) (quoting Smith, 2023 WL 2734804, at *2). For these reasons, the district court held that the "relevant Oregon criminal statutes [did] not include a private right of action, [and thus the] [p]laintiff's claims for harassment and providing false information to law enforcement must . . . be dismissed." Id.

The Court agrees with Safeway and the persuasive authorities described above that ORS § 166.065 does not give rise to a private right of action. (See Safeway's Mot. at 1-2, 4-5, 13 & Safeway's Reply at 1-3, 8, seeking dismissal with prejudice on this ground). McNeal appears to agree that he cannot pursue a civil claim under ORS § 166.065, which he cited as "evidentiary context" and to "illustrate the type and severity of conduct" at issue. (See Pl.'s Resp. Safeway's Mot. at 4-6, reflecting that McNeal "acknowledges that ORS 166.065 does not provide an independent private right of action" and represents that he is "not asserting ORS 166.065 as a stand-alone cause of action" and did "not assert a civil cause of action under ORS 166.065").

Contrary to McNeal's argument, he states in the second amended complaint that he "brings claims" and "this action" against Safeway for "harassment under ORS 166.065" and bases such claims in whole or in part on Quintanilla and Stewart's actions. (See SAC ¶¶ 25, 37-

38; *see also* Safeway's Reply at 3, arguing that McNeal "ignores the plain language of the Second Amended Complaint, which, as pled, . . . asserts ORS 166.065 as a stand-alone cause of action"). McNeal also suggests that his harassment claim or allegations under ORS § 166.065 satisfy the *Twombly-Iqbal* facial plausibility standard. (*See* Pl.'s Resp. Safeway's Mot. at 2, 4-6, opposing dismissal).

For clarity and finality purposes, the Court addresses the merits of McNeal's harassment claim. Consistent with the authorities cited herein, the Court finds that McNeal fails to state and cannot cure his harassment claim against Safeway under ORS § 166.065, because this criminal statute does not give rise to a private right of action. *See Gottfried*, 2026 WL 18819, at *7 (same); *Smith,* 2023 WL 2734804, at *2 (same).

For these reasons, the Court grants Safeway's motion to dismiss McNeal's harassment claim with prejudice.[12] *See Arthur v. Windsor Shadows Homeowner's Ass'n*, No. 22-16039, 2024 WL 1133576, at *1 (9th Cir. Mar. 15, 2024) (applying Arizona law and holding that "the district court properly dismissed with prejudice [the self-represented plaintiff's] harassment claims because she failed to identify a statute providing a private cause of action") (simplified); *see also In re Arenas*, No. 21-60062, 2023 WL 3451028, at *1 (9th Cir. May 15, 2023) ("The bankruptcy court and [bankruptcy appellate panel] correctly concluded that the criminal statutes [upon which the self-represented plaintiff] relied . . . 'provide no basis for civil liability. . . . Dismissal with

---

[12] Given this decision, and because McNeal's requested clarifications are duplicative and unnecessary, the Court denies as moot McNeal's recently filed motion for leave to file a third amended complaint to "clarify that certain statutory references (ORS 166.0665 and ORS 653.450/653.455) are included only as factual context and are not asserted as independent causes of action." (*See* Pl.'s Mot. Leave File Third Am. Compl. at 1-2, ECF No. 57, identifying this as McNeal's "sole purpose" and stating that "[a]ll other allegations and claims remain unchanged"; *cf.* Pl.'s Resp. Safeway's Mot. at 4-6, 20-21, making the same points).

prejudice was appropriate because those claims could not be saved by any amendment.") (simplified).

**B.    Disability Discrimination**

The parties dispute whether McNeal plausibly alleges that Safeway violated ORS § 659A.112 by discriminating against him on the basis of a perceived mental health disability. (Safeway's Mot. at 5-6; Pl.'s Resp. Safeway's Mot. at 6-11; Safeway's Reply at 3-4.)

**1.    Applicable Law**

"It is an unlawful . . . for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment on the basis of disability." OR. REV. STAT. § 659A.112(1). A plaintiff suffers from a "disability" if they satisfy any of these criteria: (1) "[t]he individual has a physical or mental impairment that substantially limits one or more major life activities of the individual," (2) "[t]he individual has a record of having a physical or mental impairment that substantially limits one or more major life activities of the individual," or (3) "[t]he individual is regarded as having a physical or mental impairment that substantially limits one or more major life activities of the individual." Id. § 659A.104(1)(a)-(c). Examples of "[a]ctivities and functions" constituting "major life activities" include, but are not limited to, communicating, working, socializing, interacting with others, and employment. Id. § 659A.104(2)(a)-(z).

**2.    Analysis**

Safeway fails to demonstrate that McNeal's disability discrimination claim is subject to dismissal.

The parties focus on the prima facie elements of a disability discrimination claim. (Safeway's Mot. at 5-6; Pl.'s Resp. Safeway's Mot. at 6-11; Safeway's Reply at 3-4.) McNeal is "not strictly required to allege all elements of a prima facia discrimination case at the pleading

stage[.]" *Smith v. Nev. Dep't of Motor Vehicle Off.*, No. 24-5060, 2025 WL 1513776, at *2 (9th Cir. May 28, 2025) (first citing *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1050 & n.2 (9th Cir. 2012); and then citing *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004)). Nevertheless, the Court may (and does) "use the prima facie elements as a guide to evaluate, holistically, whether the complaint contains sufficient factual content to put forward a 'plausible' or 'straightforward' case of discrimination." *Id.* at *2 n.2 (quoting *Sheppard*, 694 F.3d at 1050 n.2).

"The standard for establishing a prima facie case of discrimination under Oregon law is identical to that used in federal law." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). Thus, establishing a prima facie case of disability discrimination requires a plaintiff to demonstrate that: "(1) [he] is disabled; (2) [he] is qualified; and (3) [he] suffered an adverse employment action because of her disability." *Id.*; *see also Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018) (noting that "qualified" means "able to perform the essential functions of the job with or without reasonable accommodation" (citing *Snead*, 237 F.3d at 1087)).

Before turning to the merits, the Court addresses Safeway's argument that it is unclear whether McNeal "even intends to allege a disability discrimination claim." (Safeway's Mot. at 6.) Safeway notes that in the second amended complaint, McNeal incorrectly "identifies ORS 659A.112 as his basis for bringing a discrimination claim based on race." (*Id.* at 6 & n.4, citing SAC ¶ 25.) Relatedly, Safeway argues that McNeal advances only the disability-based allegations that he was "'demeaned on the basis of perceived mental health' and that he was accused of having a 'germ phobia.'" (*Id.* at 6 & n.4, first citing SAC ¶ 25; and then quoting SAC ¶ 34.)

It is correct that McNeal incorrectly cites ORS § 659A.112 in support of his race discrimination claim. (SAC ¶ 25.) McNeal, however, also asserts separate claims for "disparate treatment under ORS 659.030," "violations of Title VII," and "[d]iscrimination in violation of ORS 659A.112." (*Id.* ¶ 56.) Further, McNeal does so shortly before and after alleging that (1) Quintanilla "mocked [his] mental state," "demeaned [him] on this basis of perceived mental health," "belittled his workplace health concerns," and subjected him to "derogatory," "offensive[,] and unwelcome comments . . . , including [by] falsely stating that [he] had a 'germ phobia' and attributing mental health conditions [to him]," all of which "compound[ed] [his] emotional distress and workplace humiliation," and (2) Renfrow "contradicted his own direction" to McNeal by submitting a write-up in which he corroborated Pfeiffer's statements and "falsely claim[ed]" that McNeal "exhibited a pattern of unhealthy behavior" at work and "made false statements about [McNeal's] conduct and mental state," thereby "subject[ing] [McNeal] to shame, emotional distress, and further hostility from management." (*Id.* ¶¶ 34-35, 38-39, 57.)

Courts must "liberally construe *pro se* pleadings and afford the [plaintiff] the benefit of any doubt." *Kaneakua v. Derr*, No. 23-1587, 2025 WL 1924889, at *1 (9th Cir. July 14, 2025) (citing *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020) (en banc)). "The obligation to construe *pro se* filings liberally means courts must frequently look to the contents of a *pro se* filing rather than its form." *Ross*, 950 F.3d at 1173 n.19. McNeal's mental health allegations and general references to a claim for discrimination in violation of ORS § 659A.112 are sufficient to put Safeway on notice that he is asserting a "regarded as" or "perception" theory of disability discrimination.

///

PAGE 30 – OPINION AND ORDER

Proceeding on the assumption that McNeal intended to assert a disability discrimination claim, Safeway argues that McNeal fails to state such a claim because he does not allege facts that plausibly suggest that "he suffered from a disability, i.e., a physical or mental impairment that substantially limits one or major life activities," and therefore fails to satisfy the "first element of a disability discrimination claim." (Safeway's Mot. at 6) (simplified). Safeway adds that "[b]ecause [McNeal] fails to allege a disability, he certainly cannot satisfy the third element that he suffered an adverse employment action because of his disability (or perceived disability)."[13] (*Id.*)

"The question of whether an individual meets the . . . definition of disability should not demand extensive analysis." *Williams v. Koenig*, No. 21-16092, 2024 WL 1477067, at *1 (9th Cir. Apr. 5, 2024) (ADA); *see also Simmons v. AutoZoners, LLC*, No. 3:23-cv-00166-SB, 2025 WL 1798605, at *15 (D. Or. May 22, 2025) (making the same observation and noting the "equivalent definition[s]" of disability under federal and state law) (simplified), *findings and recommendation adopted*, 2025 WL 1795097, at *1 (D. Or. June 30, 2025). "Also noteworthy is that . . . '[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.'" *Simmons*, 2025 WL 1798605, at *15 (quoting *Nunies*, 908 F.3d at 436); *see also* OR. REV. STAT. § 659A.104(3) (same).

The Court finds that McNeal plausibly alleges that he was "regarded as" disabled because of a mental health impairment. The district court's decision in *Doe v. Teachers Council, Inc.*, 757

---

[13] McNeal alleges that before his constructive discharge and "involuntary" resignation, he "endured prolonged mistreatment and emotional distress," "experienced a severe sickle cell-related pain crisis," and "consult[ed] with a physician." (SAC ¶ 110.) Given its findings below, the Court finds it unnecessary to evaluate whether McNeal also states a claim based on a "record of" disability theory.

F. Supp. 3d 1142, 1167-68 (D. Or. 2024), is instructive. In that case, the plaintiff alleged that the defendant stated that it was "[un]comfortable placing [her] in a new school environment, which [was] likely to present new challenges and new stressors," because of a recent one-night hospitalization for mental health treatment, and that she must "take responsibility for her mental health and let go of her anger with [her former] school before it would consider approving a transfer request for the [upcoming] year." *Id.* at 1157, 1167-69 (simplified). The district court held that the plaintiff "plausibly alleged the existence of a disability" because she "plead[ed] facts showing that defendant perceived [her] to have a mental impairment and would not approve [her] transfer . . . until [she] treated or otherwise 't[ook] responsibility for' such impairment." *Id.* at 1168.

Similarly here, McNeal alleges that after being subjected to a racial slur that resulted in customers fighting, Quintanilla provided him with a disciplinary write-up, "framed [him] as the cause of [the] conflict," and "pressured" him to "transfer departments" and "choose between job security and enduring workplace hostility" based on Quintanilla's view that a similar conflict was "going to happen again" and while Quintanilla "mocked [his] mental state," "demeaned [him] on the basis of perceived mental health," and "made offensive and unwelcome comments . . . , including falsely stating that [he] had 'a germ phobia' and attributing mental health conditions [to him.]" (SAC ¶¶ 4-13, 12, 22-23, 34-35, 38-39.) McNeal also alleges that a month after receiving this write-up and no union support, having his hours reduced, reporting "ongoing harassment and hostility," and facing "escalating efforts to isolate and discredit [him] through false and biased accusation," Renfrow "falsely claimed [that he] exhibited a pattern of unhealthy behavior" and "made false statements about [his] conduct and mental state." (*Id.* ¶¶ 27-57.)

Like the plaintiff in *Teachers Council*, McNeal's allegations suggest that Safeway's employees perceived him as having mental health impairments that restricted his ability to, among other things, interact and work with others and "as compared to most people in the general population." OR. REV. STAT. § 659A.104(3) (stating that "[a]n individual is substantially limited in a major life activity if the individual has an impairment, had an impairment or is perceived as having an impairment that restricts one or more major life activities of the individual as compared to most people in the general population"). It is reasonable to infer from McNeal's allegations that his co-workers relied on these perceptions when they subjected him to disciplinary action, asked management to no longer schedule him to work during their shifts, and reported that he was exhibiting a pattern of unhealthy behavior at work. For these reasons, the Court concludes that McNeal plausibly alleges the existence of a "disability."

The parties also dispute whether McNeal alleges facts sufficient to establish a connection between any actual or perceived disability and adverse employment action. (*See* Pl.'s Resp. Safeway's Mot. 6-11, addressing this issue; Safeway's Reply at 3-4, raising this argument for the first time in reply; *cf.* Safeway's Mot. at 6, conditioning Safeway's argument regarding the third element of a prima facie case of disability discrimination on its first argument regarding the existence of a disability; Safeway's Initial Reply Supp. Partial Mot. Dismiss Pl.'s Compl. at 1-2, ECF No. 33, incorporating by reference the arguments that Safeway made in its motion to dismiss).

The Court finds McNeal's factual allegations sufficient to survive Safeway's motion to dismiss because the second amended "complaint establishes 'an entirely plausible scenario of employment discrimination.'" *Smith*, 2025 WL 1513776, at *2 (citing *Sheppard*, 694 F.3d at 1050). In other words, McNeal has "pleaded enough details about the subject matter of the case

to present a story that holds together" that he was "regarded as" disabled, qualified for his position, and suffered an adverse employment action because of his disability. *See id.* (making a similar finding); *Snead*, 237 F.3d at 1087 (listing the elements of a prima facie case). Accordingly, the Court denies Safeway's motion to dismiss McNeal's disability discrimination claim.

### C.     Defamation

McNeal asserts a defamation claim against Safeway based on the "false written statements" that its employees "used to misrepresent [his] behavior and character." (SAC ¶ 58.) Safeway moves to dismiss McNeal's defamation claim under Rule 12(b)(6). (Safeway's Mot. at 7-8.)

#### 1.     Applicable Law

##### a.     Defamatory Statements and Publication

The Oregon Supreme Court has "recognized a common-law action for defamation for injury to reputation for over 150 years." *Neumann v. Liles*, 369 P.3d 1117, 1121 (Or. 2016) (citation omitted). Under Oregon law, defamation comprises both libel (injurious written or printed words) and slander (injurious spoken words). *See id.* (discussing actionable forms of defamation and explaining that "[l]ibel[] . . . [is] defamation by written or printed words" and "[s]lander . . . is defamation by spoken words" (citing *Hinkle v. Alexander*, 417 P.2d 586, 589 (Or. 1966))).

"To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party." *Neumann*, 369 P.3d at 1121 (citing *Wallulis v. Dymowski*, 918 P.2d 755, 757-58 (Or. 1996)). The Oregon Supreme Court has explained that "[a] defamatory statement is one that would subject the plaintiff 'to hatred, contempt or ridicule[,] tend to diminish the esteem, respect, goodwill or

PAGE 34 – OPINION AND ORDER

confidence in which [the plaintiff] is held[,] or . . . excite adverse, derogatory or unpleasant feelings or opinions against [the plaintiff].'" *Id.* (simplified) (quoting *Farnsworth v. Hyde*, 512 P.2d 1003, 1004 (Or. 1973)); *Lowell v. Wright*, 512 P.3d 403, 411 (Or. 2022) (describing a defamatory statement in a similar way and stating that such a statement "can be the basis for a defamation claim").

"To be actionable, a [statement] must be both false and defamatory." *Reesman v. Highfill*, 965 P.2d 1030, 1034-35 (Or. 1998) (citing *Harley-Davidson v. Markley*, 568 P.2d 1359, 1361-62 (Or. 1977)); *see also Kolwitz v. Lincoln Cnty. ex rel. Lincoln Cnty. Sheriff's Off.*, 520 F. App'x 570, 570-71 (9th Cir. 2013) (holding that the self-represented plaintiffs "failed to raise a triable dispute as to [the] required elements" of their defamation claim, and noting that "for a statement to be actionable under Oregon law, the statement at issue must be both defamatory and false" (citing *Reesman*, 965 P.2d at 1034)). "In general, a statement is published when it is communicated to a third party." *Wallulis*, 918 P.2d at 758 (citing *State ex rel. Advanced Dictating v. Dale*, 524 P.2d 1404, 1406 (1974)). Thus, "if a person makes a defamatory statement about another person, but that statement is not conveyed to a third party, no publication has occurred." *Id.*

### b.    Pecuniary Loss or Special Harm

"In defamation [cases], a plaintiff ordinarily must show that a defamatory publication resulted in 'special harm.'" *NV Transp., Inc. v. V&Y Horizon, Inc.*, 462 P.3d 278, 283-84 (Or. Ct. App. 2020); *see also Herrera v. C & M Victor Co.*, 337 P.3d 154, 161-62 (Or. Ct. App. 2014) ("Special harm is the loss of something having an economic or pecuniary value[.]" (quoting *Nat'l Union Fire Ins. Co. v. Starplex Corp.*, 188 P.3d 332, 348 (Or. Ct. App. 2008))). In some cases, however, "defamatory statements are actionable *per se*," *Neumann*, 369 P.3d at 1121, "on the theory that their injurious character is admitted by all . . . ; and that on that account they are

conclusively presumed to result in damage." *NV Transp.*, 462 P.3d at 283 (quoting *L & D of Or., Inc. v. Am. States Ins. Co.*, 14 P.3d 617, 621-22 (Or. Ct. App. 2000)). When that is the case, the plaintiff need not present proof of pecuniary loss or special harm. *See Lowell*, 512 P.3d at 411 ("Because the claim is libel *per se*, plaintiff [was] not obliged to prove a third element: that the defamatory statement caused pecuniary loss or special harm." (citing *Brown v. Gatti*, 145 P.3d 130, 133 (Or. 2006))); *NV Transp.*, 462 P.3d at 283-84 ("[T]he requirement for proof of special harm is dispensed with if the defamatory statement is deemed to be defamatory *per se*.") (citation omitted).

### 2.    Analysis

Safeway argues that it is entitled to dismissal of McNeal's defamation claim because McNeal bases his claim solely on statements that Safeway's employees made in workplace disciplinary reports, which are "privileged under Oregon law and may not serve as a basis for a defamation claim." (Safeway's Mot. at 7-8, arguing that "every statement" at issue "falls under a qualified privilege"; *see also* Safeway's Reply at 5-6, repeating this argument and presenting others).

Oregon courts have recognized that "[a] statement that is otherwise defamatory is privileged if it is uttered under such circumstances that the law grants immunity to the speaker." *Mannex Corp. v. Bruns*, 279 P.3d 278, 285 (Or. Ct. App. 2012) (citing *Wattenburg v. United Med. Lab'ys, Inc.*, 525 P.2d 113, 114 (Or. 1974)). "There are two forms of privilege that may apply in a defamation action; a defamatory statement may be either 'absolutely privileged' or 'qualifiedly [or conditionally] privileged.'" *Wallulis*, 918 P.2d at 760; *see also id.* n.5 (noting that courts use the terms "conditional privilege" and "qualified privilege," and the terms have the "same meaning").

///

An "absolute privilege . . . bars [a] defamation claim altogether." *DeLong v. Yu Enters., Inc.*, 47 P.3d 8, 10 (Or. 2002) (citing *Moore v. West Lawn Mem'l Park*, 512 P.2d 1344, 1346 (Or. 1973)). "By contrast, a qualified privilege does not bar the action, but [it does] require[] the plaintiff to prove that the defendant abused the privileged occasion, in order to recover from the defendant." *Wallulis*, 918 P.2d at 760-61 (simplified) (quoting *Bank of Or. v. Indep. News*, 693 P.2d 35 (1985)). "Generally, a qualified privilege exists to protect three kinds of statements: (1) those made to protect the defendant's interests; (2) those made to protect the plaintiff's employer's interests; or (3) those made on a subject of mutual concern to the defendant and the persons to whom the statement was made." *DeLong*, 47 P.3d at 10 (citing *Wallulis*, 918 P.2d at 762).

The Oregon Supreme Court has explained that "[a] defamatory work-related statement made by an employee to that employee's supervisor concerning another employee's work performance falls into either the second or third category delineated [above.]" *Wallulis*, 918 P.2d at 762. The parties' arguments focus on the second category of statements to which a qualified privilege may attach: statements that managers and coworkers make to protect their employer's interests. (Safeway's Mot. at 8; Pl.'s Resp. Safeway's Mot. at 11-18; Safeway's Reply at 5-6; *see also* SAC ¶¶ 29-32, 36-37, 41-42, 47-53, 57-58, relying on allegedly defamatory statements in the September 2023 disciplinary write-up and Stewart's, Pfeiffer's, and Renfrow's written statements).

Safeway argues that the statements underlying McNeal's defamation claim are subject to the "qualified privilege" and dismissal under Rule 12(b)(6) "as a matter of law," because McNeal "alleges no 'abuse' of this qualified privilege[.]" (Safeway's Mot. at 8.) In support, Safeway relies on the district courts' decisions at summary judgment in *Redwind v. Western Union, LLC,*

No. 3:14-cv-01699-AC, 2016 WL 3606595, at *6 (D. Or. May 2, 2016), *findings and recommendation adopted*, 2016 WL 3410183, at *1 (D. Or. June 16, 2016), *aff'd*, 698 F. App'x 346, 347-48 (9th Cir. 2017), and *Wilson v. Dollar Tree Stores, Inc.*, No. 03-cv-00087-HA, 2004 WL 1381209, at *3 (D. Or. June 21, 2004), *aff'd*, 161 F. App'x 695, 696-97 (9th Cir. 2006). (Safeway's Mot. at 7-8; Safeway's Reply at 5-6.) McNeal disagrees and relies on the Oregon Supreme Court's decision at summary judgment in *Wallulis*. (Pl.'s Resp. Safeway's Mot. at 12, 14.)

The Court concludes that Safeway fails to demonstrate that it is entitled to dismissal of McNeal's defamation claim at the pleading stage, and therefore denies Safeway's motion on this ground.

Under Oregon law, truth and privilege are affirmative defenses to defamation claims. *See Elizabeth Retail Props. LLC v. KeyBank Nat'l Ass'n*, 83 F. Supp. 3d 972, 995 (D. Or. 2015) (citing *Benassi v. Georgia-Pacific*, 662 P.2d 760, 763 (Or. Ct. App. 1983)); *see also Benassi*, 662 P.2d at 763 (observing post-jury trial that "[i]n response to the [plaintiff's] defamation claim, [the] defendant raised two affirmative defenses: truth and privilege"); *Lewis v. Carson Oil Co.*, 127 P.3d 1207, 1210 (Or. Ct. App. 2006) (noting at summary judgment that the "defendant properly raised the qualified privilege defense"). In other words, even when a plaintiff "establish[es] a prima face case," the plaintiff's defamation claim "remains 'subject to defenses.'" *Wahab v. Wahab*, No. 3:23-cv-00098-SB, 2024 WL 3640108, at *4-5 (D. Or. Aug. 2, 2024) (first quoting *Lowell*, 512 P.3d at 411; and then citing *Schafroth v. Baker*, 553 P.2d 1046, 1046-48 (Or. 1976)).

Given that it is an affirmative defense, a defendant must "establish[] a qualified privilege." *Benassi*, 662 P.2d at 763. When a defendant "properly raises a qualified privilege,"

the plaintiff then has the "opportunity" (and burden) to "prov[e] that the defendant lost that privilege." *Lewis*, 127 P.3d at 1210 (citing *Walsh v. Consol. Freightways, Inc.*, 563 P.2d 1205, 1211 (Or. 1977))); *see also Elizabeth Retail Props. LLC*, 83 F. Supp. 3d at 996 (referring to a defamation plaintiff's "opportunity to potentially overcome the qualified privilege"); *Wahab*, 2024 WL 3640108, at *11 (collecting cases on the subsequent question of whether a plaintiff "raised a genuine issue of material fact as to whether [the] [d]efendant abused [its] privilege") (simplified).

A plaintiff can overcome a properly raised qualified privilege defense by presenting evidence that the defendant abused the occasion giving rise to and thus "lost" its privilege. *Benassi*, 662 P.2d at 763; *Lewis*, 127 P.3d at 1210-11. One of the ways in which a plaintiff can do so is by demonstrating that the defendant did not believe or lacked "reasonable grounds" for believing the truth of the defamatory matter. *Benassi*, 662 P.2d at 763 (simplified); *see also Wahab*, 2024 WL 3640108, at *11 (making a similar observation about the family relationship privilege).

At this stage, a court may not resolve factual disputes, let alone disputes about whether a defendant abused an occasion giving rise to a conditional privilege defense. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984) (per curiam) (stating that "affirmative defenses may not be raised by motion to dismiss" unless "the defense raises no disputed issues of fact"); *see also Elizabeth Retail Props. LLC*, 83 F. Supp. 3d at 996 (declining to dismiss a defamation claim and deeming it "premature" to resolve a conditional privilege defense (citing *Scott*, 746 F.2d at 1378)).

Safeway relies only on cases decided at summary judgment, as well as portions of the second amended complaint in which McNeal relies on an allegedly "misleading account" that

Stewart offered and resulted in his September 2023 disciplinary write-up, which was "based on false information." (*See* Safeway's Mot. at 7-8, first citing *Redwind*, 2016 WL 3606596, at *7; then citing *Wilson*, 2004 WL 1381209, at *3; and then citing SAC at 10.) Notably, McNeal alleges both that he subsequently discovered that several managers and coworkers submitted statements corroborating his account of the underlying events, and that Stewart "authored or contributed to [the] knowingly false and misleading [September 2023] disciplinary record." (SAC ¶¶ 30-31, 37, 58, 64.) Assuming without deciding that a conditional privilege may apply, it is reasonable to infer from McNeal's allegations that Stewart abused any occasion giving rise to the privilege by disregarding evidence favorable to McNeal and choosing instead to knowingly and falsely blame him for escalating and contributing to the incident that ensued after customers subjected him to a racial slur and to which law enforcement responded. (*Id.* ¶¶ 8-16, 30-31.)

The Court recognizes that Safeway disputes McNeal's allegations and maintains that McNeal relies on certain statements that undermine his defamation claim. (Safeway's Mot. at 7-8; Safeway's Reply at 5-6.) Safeway may revisit these issues and any others at summary judgment. (*See* Safeway's Reply at 5-6, referring for the first time and in passing to other aspects of McNeal's prima facie case, as opposed to relying solely on an affirmative defense).

For these reasons, the Court denies Safeway's motion to dismiss McNeal's defamation claim.

### D.     ORS §§ 653.450 and 653.455

McNeal alleges that he "brings this action" against Safeway, in part because it retaliated against him for "asserting scheduling rights under ORS 653.450" and failed to "provide compensation for last-minute schedule changes in violation of ORS 653.455." (SAC ¶ 81.) Safeway moves to dismiss McNeal's claims under ORS §§ 653.450 and 653.455, arguing that these statutes fail expressly to provide McNeal with private rights of action. (Safeway's Mot. at

9-10.) Safeway also notes that McNeal "appears to concede" in his response that "no private

right of action exists" under these statutes. (Safeway's Reply at 6, citing Pl.'s Resp. Safeway's

Mot. at 20.)

Shortly after the parties completed their briefing, a judge from this district addressed the

"issue of statutory interpretation" that Safeway raises. *See Wilson v. Safeway, Inc.*, No. 6:25-cv-

00478-MTK, 2025 WL 2496010, at *3-4 (D. Or. Aug. 29, 2025).[14] The district judge's statutory

interpretation analysis conflicts with Safeway's arguments and identifies a private right of action

under ORS § 653.455:

> On behalf of himself and the other hourly employees, [the] [p]laintiff
> alleges that [Safeway] modified his work schedule without adequate advance
> notice in violation of ORS 653.436 and then failed to provide the additional
> compensation owed for working the untimely modified schedule, as required by
> ORS 653.455.
>
> [Safeway] argues that count one should be dismissed because (1) neither
> ORS 653.436 nor ORS 653.455 contain an express private right of action for
> enforcement and (2) the Commissioner of the Bureau of Labor and Industries
> ("BOLI") has exclusive enforcement authority over violations of ORS 653.436
> and ORS 653.455.
>
> . . . .
>
> . . . [T]he court begins by examining the text and context of ORS
> 653.480(1) which states, "an employee asserting a violation of ORS 653.470 may
> file a complaint with [BOLI] . . . under ORS 659A.820 or a civil action as
> provided in ORS 659A.885." OR. REV. STAT. §] 653.480(1). Next, ORS
> 659A.885(1) provides a private cause of action for anyone subject to an unlawful
> employment practice listed in ORS 659A.885(2). . . . ORS 659A.885(2)(b)
> prohibits the violation of any right protected under ORS 653.470. Under ORS
> 653.470, employers are prohibited from interfering with, restraining from,
> denying, or retaliating against an employee's exercise of a right codified at ORS
> 653.412 to ORS 653.485. OR. REV. STAT. §] 653.470(1)-(2). . . . [As] relevant
> here, an employee has the right (1) to a written work schedule with at least
> [fourteen] calendar days of advance notice (ORS 653.436(1)); (2) to decline any
> work shifts not included in the employee's written work schedule (ORS
> 653.436(5)(b)); (3) to additional compensation for working a schedule modified

---

[14] The Court notes that different law firms represent Safeway in the *Wilson* case.

by the employer without adequate advance notice (ORS 653.455(2)(a)); and (4) to additional compensation when the employer cancels a shift or reduces the employee's written work schedule without adequate advance notice (ORS 653.455(2)(b)).

In summary, an employee asserting the violation of a right protected under ORS 653.412 to ORS 653.485 may file a complaint with BOLI or they may bring a cause of action under ORS 659A.885(1). [OR. REV. STAT. §] 653.480(1). [Safeway's] argument that count one should be dismissed because ORS 653.436 and ORS 653.455 do not contain an express private cause of action, ignores the statutory landscape and [conflicts with] the legislature's clear intent.

[Safeway] also argues that [the] plaintiff cannot bring a claim because ORS 653.480(2) assigns BOLI exclusive enforcement authority for the violation of ORS 653.436 and ORS 653.455. As explained above, ORS 653.470 prohibits the interference with the rights codified at ORS 653.412 to ORS 653.485. An employee asserting the violation of a right protected under ORS 653.470 has two options: the employee may file a [BOLI] complaint . . . "or" the employee may file "a civil action as provided in ORS 659A.885." [OR. REV. STAT. §] 653.480(1). If the employee chooses to file a complaint with BOLI, then the enforcement powers of the BOLI commissioner are provided in ORS 653.480(2). If the employee instead chooses to file a civil action, then the enforcement powers described in ORS 653.480(2) are not relevant. [Safeway's] argument that ORS 653.480(2) assigns exclusive enforcement authority to BOLI [conflicts with] the text of ORS 653.480(1)[,] which provides employees with the option of filing a complaint with the BOLI commissioner or bringing a private cause of action.

[The] plaintiff alleges that [Safeway] violated ORS 653.436 and ORS 653.455 because it failed to timely provide him and the other hourly employees a written work schedule, failed to provide additional compensation after modifying the written work schedule without adequate advance notice, and failed to provide additional compensation after reducing or cancelling shifts without adequate advance notice. The violation of these rights is actionable under ORS 659A.885(2)(b) and [the] plaintiff plausibly states a claim for relief. [As a result, Safeway's] motion to dismiss count one is denied.

*Wilson v. Safeway, Inc.*, No. 6:25-cv-00478-MTK, 2025 WL 2496010, at *3-4 (D. Or. Aug. 29, 2025) (simplified).

In this case, Safeway argues that because no private right of action exists under ORS § 653.450 and 653.455, the Court should dismiss McNeal's claims under these provisions with prejudice and as a "matter of law." (Safeway's Mot. at 9-10, 13.) In support, Safeway argues that Oregon's predictive work scheduling laws "contain an express delegation of a private right of

action for a portion of the statutory scheme [but] the remainder of the scheme" is subject to the

BOLI commissioner's enforcement powers. (*Id.* at 9, citing OR. REV. STAT. § 653.480(1).)

Safeway adds that BOLI is "tasked with the enforcement of rights established" under, among

other provisions, ORS §§ 653.450 and 653.455, and the "only provision providing for private

enforcement . . . concern[s] retaliation and inference claims under the predictive scheduling law,

which states, 'An employee asserting a violation of ORS 653.470 may file a complaint with the

Commissioner of the [BOLI] . . . under ORS 695A.820 or a civil action as provided in ORS

659A.885.'" (*Id.*, first citing OR. REV. STAT. § 653.480(2); and then quoting OR. REV. STAT.

§ 653.480(1).)

 ORS § 653.470 and 653.480 do not support Safeway's claim that there is no private right

of action under ORS § 653.455, or that it is subject only to the BOLI commissioner's

enforcement powers.

 ORS § 653.470 makes it an unlawful employment practice for an employer to

(1) "[i]nterfere with, restrain, deny or attempt to deny the exercise of any right protected under

ORS 653.412 to 653.485" or (2) "[r]etaliate or in any way discriminate against an individual

with respect to hire or tenure or any other term or condition of employment because the

individual has inquired about the provisions of ORS 653.412 to 653.485." OR. REV. STAT.

§ 653.470(1)-(2). A plaintiff alleging one of these unlawful practices is entitled to bring a civil

action:

> (1) An employee asserting a violation of ORS 653.470 may file a complaint with
> the Commissioner of the [BOLI] under ORS 659A.820 or a civil action as
> provided in ORS 659A.885.
>
> (2) The commissioner has the same enforcement powers [i.e., not exclusive] with
> respect to the rights established under this section and ORS 653.422, 653.432,

653.436, 653.442, 653.450, 653.455, 653.465, 653.470 and 653.485 as are established in this chapter and ORS chapter 652.

OR. REV. STAT. § 653.480(1)-(2) (emphasis added).

McNeal complains of practices that ORS § 653.470 proscribes and related to rights protected under the statutory ranges cited therein. (*See* SAC ¶¶ 51, 72, 76, 78, 81-82, 88, alleging that Safeway retaliated against McNeal for "asserting scheduling rights under ORS 653.450," and that McNeal reported and complained about such "retaliatory scheduling" and related "concerns," "interference" with his pursuit and being deprived of his scheduling rights, and lack of adequate notice and compensation for "last-minute changes" to his work schedule). Thus, McNeal could have filed either a BOLI complaint for "violation of ORS 653.470" or a "civil action as provided in ORS 659A.885," *see* OR. REV. STAT. § 653.480(1), and if he pursued the latter option, ORS § 659A.885 excepts only "an action . . . for a claim related to ORS 653.450." OR. REV. STAT. § 659.885(2)(b) ("An action may be brought under subsection (1) of this section alleging a violation of . . . ORS 653.470, except an action may not be brought for a claim relating to ORS 653.450."); *Wilson*, 2025 WL 2496010, at *3 n.1 ("ORS 659A.885(2)(b) excludes a cause of action for a claim relating to ORS 653.450, a statute not relevant to [the pending motion].").

Responding to Safeway's arguments, McNeal "acknowledges" that claims under ORS § 653.450 and 653.455 are "ordinarily enforceable through [BOLI]," and represents that he does "not rely on these statutes" as "stand-alone causes of action," "independent claims," "private cause[s] of action," or "sources of damages." (Pl.'s Resp. Safeway's Mot. at 20-21.) Instead, McNeal relies on allegations related to ORS § 653.450 and 653.455 for "context only" and to support, among other things, his theory that Safeway retaliated against him for whistleblowing. (*Id.*)

PAGE 44 – OPINION AND ORDER

The Court notes that nothing, including its rulings below, prevents McNeal from relying at later stages on his work scheduling-related allegations and arguing that they support the claims and theories that he asserts. That said, McNeal alleges that he "brings this action" against Safeway for retaliating against him for asserting and "interfer[ing]" with his "scheduling rights under ORS 653.450." (SAC ¶ 81.) McNeal cannot pursue a claim under ORS § 653.450. *See* OR. REV. STAT. § 659A.885(2)(b); *Wilson*, 2025 WL 2496010, at *3 n.1 ("ORS 659A.885(2)(b) excludes a cause of action for a claim relating to ORS 653.450, a statute not relevant to [the pending motion]."). For clarity and finality purposes, the Court grants Safeway's motion to dismiss with prejudice McNeal's claim under ORS § 653.450.

The Court, however, denies Safeway's motion to dismiss McNeal's claim under ORS § 653.455. As Safeway observes, McNeal "appears to concede no private right of action exists." (Safeway's Reply at 6, citing Pl.'s Resp. Safeway's Mot. at 20-21.) McNeal also states that he did not intend to bring a standalone or damages claim against Safeway under ORS § 653.455. (Pl.'s Resp. Safeway's Mot. at 20-21.) Nevertheless, McNeal is proceeding as a self-represented litigant, neither party was able to review or present arguments regarding the district court's decision in *Wilson*, and McNeal's concession may reflect only his good faith review of and undue reliance on Safeway's legal arguments. McNeal is entitled to the benefit of any doubt. As such, the Court grants the parties leave to reconsider and revisit at summary judgment McNeal's claim under ORS § 653.455. *Cf. Wilson*, 2025 WL 2496010, at *7 ("[The] [p]laintiff alleges that [Safeway] violated ORS 653.436 and ORS 653.455 because it failed to timely provide him and the other [h]ourly [e]mployees a written work schedule, . . . additional compensation after modifying the written work schedule without adequate advance notice, and . . . additional compensation after reducing or cancelling shifts without adequate advance notice. The violation

of these rights is actionable under ORS 659A.885(2)(b) and [the] [p]laintiff plausibly states a claim for relief.").

For these reasons, the Court grants in part and denies in part Safeway's motion to dismiss McNeal's claims under ORS § 653.450 and 653.455, and dismisses the former claim with prejudice.

### E.    Wrongful Discharge

The parties' remaining dispute concerns whether McNeal alleges facts sufficient to state a claim against Safeway for wrongful discharge. (Safeway's Mot. at 10-13; Pl.'s Resp. Safeway's Mot. at 21-25; Safeway's Reply at 6-8.) The Court concludes that McNeal states a plausible claim for relief.

### 1.    Applicable Law

Under Oregon law, "[a] plaintiff can bring a claim of constructive wrongful discharge against their employer if the working conditions were such that they essentially faced a 'forced resignation.'" *Schumacher v. J.R. Simplot Co.*, No. 6:21-cv-00489-MC, 2021 WL 3604836, at *2 (D. Or. Aug. 13, 2021) (quoting *Stupek v. Wyle Lab'ys Corp.*, 963 P.2d 678, 681 (Or. 1998)). To establish a wrongful discharge claim, a plaintiff must plead (and ultimately prove) the following four elements:

> (1) the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions *or* knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions.

*McGanty v. Staudenraus*, 901 P.2d 841, 856-57 (Or. 1995) (footnotes omitted); *see also*

*Hernandez-Nolt v. Washington County*, 391 P.3d 923, 928 (Or. Ct. App. 2017) (explaining that

under Oregon law, "[a] constructive discharge is not, in and of itself, a tort; rather, it is simply an alternate means of establishing the element of discharge in a claim for wrongful discharge") (simplified).

### 2. Analysis

Safeway moves to dismiss on two grounds. First, Safeway argues that the temporal proximity between McNeal's resignation in November 2024 and the "last alleged hostile and unlawful conduct" that McNeal experienced (e.g., McNeal's August 2024 conversation with Pagliaro) is insufficient to support a plausible wrongful discharge claim. (Safeway's Mot. at 10-12.) Second, Safeway argues that McNeal's claim is implausible because it is based largely on his "subjective interpretations of alleged conduct" and suggests only that objectively tolerable working conditions caused him to resign, emphasizing his acknowledgment that his resignation stemmed from his severe sickle-cell crisis in September 2024 and consultation with a physician. (*Id.* at 12-13.)

The Court is not persuaded by these arguments. To state a plausible claim, McNeal must allege facts sufficient to demonstrate that Safeway intentionally "created" or "maintained" conditions that it "knew" would, or "desired" or were "certain" or "substantially certain" to, and ultimately did, cause McNeal to resign and a "reasonable person" in McNeal's position to do the same. *See Hernandez-Nolt*, 391 P.3d at 928 (quoting *McGanty*, 901 P.2d at 856-57). McNeal has done so.

The Court disagrees with Safeway's framing of the period and events that are relevant to its evaluation of McNeal's claim. By comparison, consider the Oregon Court of Appeals' reasoning in *Hernandez-Nolt* for deeming insufficient the evidence that the plaintiff adduced at trial:

///

[W]e conclude that [the] plaintiff did not present any evidence at trial from which a trier of fact could reasonably infer she was constructively discharged by the county in December 2003 because of her conduct during the federal audit of [the Department of Housing Services (HS)] in March 2002. The only evidence of a hostile work environment that [the] plaintiff presented occurred immediately after the federal audit and ended in September 2002[,] when [the] plaintiff was taken off of the [family self-sufficiency (FSS)] case files. [The] [p]laintiff did not testify about any intolerable conditions at HS that occurred between September 2002 and April 2003[,] when she transferred to [the Department of Aging and Veterans' Services (DAVS)]. [The] [p]laintiff was not experiencing the hostile work environment she claimed existed at HS during her four months at DAVS and during her three months of FMLA leave. However, upon her termination from DAVS, [the] plaintiff neither found out what her working conditions would be if she returned to HS, nor did she attempt to apply to work in a different county or department. The only evidence [the] plaintiff presented about the objective working conditions at HS in December 2003, when she resigned, was that [her superior and direct supervisor] still worked there.

Giving [the] plaintiff the benefit of all reasonable inferences from the evidence, as we must, the only inference that the record reasonably permits is that, when [the] plaintiff resigned from the county in December 2003, she subjectively believed that she could never work with [her superior and direct supervisor] again. However, [the] plaintiff presented no evidence from which any reasonable inference could be made about [her] objective work conditions at HS in December 2003. [The] [p]laintiff did not present evidence of the work conditions that she experienced during the seven months prior to her departure from HS in April 2003 (or why they were intolerable), or evidence about what her work conditions would be if she returned to HS in December 2003. *See Doe v. Denny's, Inc.*, 963 P.2d 650, 654 (1998) (holding that the plaintiff's wrongful discharge claim failed because "she cannot identify any act or statement by her employer that created or maintained an intolerable working condition that she would be forced to endure if she remained on the job"). In sum, [the] plaintiff did not present any evidence that she was discharged by the county in December 2003—that is, [the] plaintiff presented no evidence from which a reasonable inference could be drawn that [her superior] or [direct supervisor] were intentionally creating or maintaining an objectively intolerable work environment at HS in December 2003—or that [the] plaintiff resigned from the county as a result of that environment at HS. *McGanty*, 901 P.2d at 856 (a claim of wrongful discharge requires "that there be a discharge, before there can be a wrongful discharge").

It was [the] plaintiff's burden to present sufficient evidence on that issue such that a reasonable factfinder could find in her favor and, on this record, she did not. Accordingly, we conclude that the trial court did not err in granting a directed verdict for the [defendant] county.

391 P.3d at 928-29.

Unlike the plaintiff in *Hernandez-Nolt*, McNeal alleges that for more than a year, Safeway maintained (and he endured) intolerable, retaliatory, and racially discriminatory working conditions. (SAC ¶¶ 8-24, 26-38, 48, 57, 92, 111; *see also* Safeway's Reply at 7, relying on *Hernandez-Nolt* with respect to the purported "gap in time"). In addition to the allegations detailed above, McNeal alleges that these intolerable conditions began in and around August and September 2023, when Safeway disciplined him based on Stewart's false report, ignored corroborating evidence, and failed to address customers who subjected him to a racial slur and caused the underlying incident. (*Id.*) He also alleges that these conditions included a reduction in his work hours, "financial loss," "prolonged mistreatment," "increased marginalization," "severe emotional distress," "psychological distress," "ongoing," "uncheck[ed]," and "escalat[ing]" harassment, hostility, retaliation, discrimination, and "efforts to isolate and discredit [him] through false and biased accusations," "compounding emotional distress and workplace humiliation," and a severe sickle-cell crisis in September 2024, which prompted him to consult with a physician and resign in November 2024. (*Id.* ¶¶ 34, 40, 50, 52-54, 58, 80, 89, 97, 99, 110-11.)

The Court finds these allegations sufficient to state a plausible wrongful discharge claim. Safeway argues that McNeal's claim fails given the "trivial nature of the purported intolerable conditions." (Safeway's Reply at 8.) In so arguing, Safeway fails to accept McNeal's well-pleaded factual allegations as true and draw all reasonable inferences in McNeal's favor, as the Court must and consistent with the prohibition against resolving factual disputes at the pleading stage.

Safeway also argues that McNeal "cannot ignore" his acknowledgment that his sickle-cell crisis prompted his consultation with a physician and decision to resign. (*Id.*) In the Court's view,

these allegations support McNeal's theory that Safeway employees maintained (and he endured) stressful and intolerable working conditions. *See Tillery*, 2020 WL 400647, at *2 (recognizing that sickle-cell "crises may occur with the onset of dehydration, stress, illness, and change in temperature"); *Lewis v. Home Depot U.S.A., Inc.*, No. 14-cv-03871, 2017 WL 11633802, at *5 n.3 (N.D. Ga. Jan. 9, 2017) (observing that sick-cell "pain attacks" can "cause chronic, ongoing pain, and organ damage"), *findings and recommendation*, 2017 WL 11633787, at *1-3 (N.D. Ga. Mar. 17, 2017) (noting that a physician's letter "only mention[ed] that 'stressful conditions' can trigger [the plaintiff's] sickle cell anemia" and needed but failed "specifically [to] reference [the] alleged harassment" and thus prove that the physician "would testify that [the plaintiff's] work environment was triggering his sickle cell flare-ups");[15] *Cherry v. Longo*, 109 N.Y.S. 3d 464, 466 (N.Y. App. Div. Sept. 25, 2019) (stating that a physician "reviewed [the decedent's] hospital records and autopsy report" and opined that sickle-cell disease "could not have been the sole cause of [her] death" but an individual with sickle-cell disease "can undergo a stress or a bad trauma, which can possibly lead to [adverse] changes in their blood").

For these reasons, the Court denies Safeway's motion to dismiss McNeal's wrongful discharge claim.[16]

---

[15] McNeal represents that he can and will present evidence demonstrating that his provider diagnosed "a sickle-cell pain crisis triggered by work stress." (Pl.'s Resp. Safeway's Mot. at 21-22, 24.)

[16] In his response, McNeal cites a case that does not exist and may have been created by a generative artificial intelligence tool. (*See* Pl.'s Resp. Safeway's Mot. at 23 & Safeway's Reply at 7 n.2, addressing McNeal's cite to "*Frey v. [ODOC]*, 204 P.3d 135 (Or. Ct. App. 2009)"). The Court warns McNeal that "[a]t the very least, the duties imposed by Rule 11 require that attorneys [and self-represented parties] read, and thereby confirm the existence and validity of, the legal authorities on which they rely[,] . . . [as there is] no other way to ensure that the arguments made based on those authorities are 'warranted by existing law,' . . . or otherwise 'legally tenable.'" *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (first quoting FED. R. CIV. P. 11(b)(2); and then quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). Thus, "[a]n attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse

**CONCLUSION**

For all of these reasons, the Court (1) DENIES UFCW's motion to dismiss (ECF No. 32),

(2) GRANTS IN PART and DENIES IN PART Safeway's motion to dismiss (ECF No. 31), and

(3) DENIES AS MOOT McNeal's motion for leave to file a third amended complaint (ECF No.

57). The Court dismisses with prejudice McNeal's claims against Safeway for harassment and

violation of his right to input under ORS §§ 166.065 and 653.450.

McNeal's lawsuit may proceed on his claim against UFCW for breach of the duty of fair

representation. McNeal's lawsuit may also proceed on his claims against Safeway for

defamation, failure to compensate under ORS § 653.455, and race discrimination, retaliation,

hostile work environment, disability discrimination, and whistleblowing under Title VII and

ORS §§ 659A.030, 659A.112, and 659.199. Within fourteen days, Safeway and UFCW must file

their answers to McNeal's second amended complaint and the parties must confer and jointly file

any proposed amendments to the current case management deadlines.

**IT IS SO ORDERED.**

DATED this 22nd day of January, 2026.

_Stacie F. Beckerman_

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

of the adversary system." *Id.* (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)). Going forward, McNeal must comply with federal procedural and this district's local rules.